This case involves post-divorce proceedings.
Marvin W. Entrekin (father) and Sylvia G. Entrekin (mother) were divorced in September 1988. Pursuant to an agreement incorporated into the divorce decree, the mother was awarded custody of the parties' two minor children and the father was ordered to pay $300 per month in child support.
In March 1992, the mother filed a petition to modify, requesting an increase in child support and post-minority support for the elder child's college expenses, in accordance with Ex parte Bayliss, 550 So.2d 986 (Ala. 1989). In April 1992, pursuant to an agreement of the parties, the trial court increased the father's child support obligation in compliance with Rule 32, Ala.R.Jud.Admin., and it retained jurisdiction on the post-minority support issue.
Following ore tenus proceedings in August 1992, the trial court's order provided:
 "1. THAT the child support for the [elder child] . . . shall continue for four (4) years or until the child graduates from college, whichever occurs first.
 "2. THAT the Defendant-Mother is to use the child support to pay the child's college expenses and support her while she is in college.
 "3. THAT the [Plaintiff] shall pay $375.00 per month as child support for the child at home and $375.00 per month for [the elder child], which shall be used as college expenses for the said minor daughter."
The father appeals.
On appeal, the father raises several issues: whether theBayliss decision, authorizing post-minority support, was properly applied in this case; whether Bayliss-type support applies to an out-of-state, non-accredited college of which the father disapproves; and whether Bayliss is unconstitutional because it is unavailable to children of parents who are not divorced.
Initially we note that where evidence is presented ore tenus, the judgment of the trial court will be presumed correct unless it is unsupported by the evidence and therefore is plainly and palpably wrong. Coby v. Coby, 489 So.2d 597 (Ala.Civ.App. 1986). In actions seeking post-minority support for the college education expenses of children of dissolved marriages, the trial court "shall consider all relevant factors that shall appear reasonable and necessary." Bayliss at 987. Primarily, the trial court must consider the financial resources of the parents and the child, and the child's commitment to and aptitude for a college education; furthermore, the trial court may consider the child's relationship with the parents, and the standard of living the child would have enjoyed if the marriage had not been dissolved. Bayliss, supra. The trial court must also determine if the non-custodial parent has "sufficient estate, earning capacity, or income to provide financial assistance without undue hardship." Thrasher v. Wilburn,574 So.2d 839, 841 (Ala.Civ.App. 1990). Undue hardship does not imply the absence of personal sacrifice, as many parents sacrifice to send their children to college. Thrasher, supra.
The evidence revealed that the father has remarried, that he has no additional children, and that he earns approximately $3,600 per month. His current wife testified that she is a kindergarten teacher who also works part-time at a delicatessen. The financial statement submitted by the father shows that his monthly expenses, excluding child support, are approximately $2,800. The father testified that he and his current wife recently used funds from the wife's retirement *Page 957 
fund for the down payment and furnishing of a new home, and that because he and his current wife have no savings, they must borrow money from his father-in-law to pay bills. Testimony revealed that the mother currently earns $1,057 per month as a school teacher and that she lives in a trailer with her two children.
The parties' elder child testified that she was accepted by and plans to attend Pensacola Christian College (PCC). She testified that she was awarded an academic scholarship for $1,000 per year for four years, and that she plans to work during the school year at a job paying her $200 per month. She testified that her estimated expenses at PCC, taking into account her scholarship and her earnings, would be approximately $2,700 per year. The record reveals that she was salutatorian of her class at a Christian school that she had attended since pre-kindergarten. She testified that she has worked ten to twenty hours per week since she was 15 years old.
A post-minority support obligation should be based upon the reasonable necessaries of the child's college expenses.Thrasher, supra. The fact that the amount of post-minority support ordered happens to be the same amount as provided by the guidelines does not automatically denote error by the trial court. Brown v. Short, 588 So.2d 468 (Ala.Civ.App. 1991). InBrown, the trial court reached a similar result and this court reasoned:
 "[T]here was ample evidence before the trial court regarding the child's college expenses and it is not necessary to remand the case for such. It appears that the trial court utilized that evidence and determined that the appropriate amount for child support under the guidelines was also the appropriate amount for post-minority support."
Brown at 470. Likewise, the trial court in the instant case, after considering the proper factors, determined that post-minority support for college expenses equalled the existing guideline amount and then limited the father's obligation to a maximum of four years. While that obligation may mean some personal sacrifice for the father, we cannot find that it will cause undue hardship.
Based upon the evidence presented, we determine that it was proper for the trial court to apply Bayliss and to deduce that, had the parties remained married, they would have provided this child with a college education.
The father also argues that he should not be ordered to contribute to this child's attendance at a non-accredited, out-of-state college of which he apparently disapproves. Testimony revealed that the father preferred that his daughter attend college in Mobile. The child testified regarding her preference for attending PCC. She testified that her decision was based upon her agreement with PCC's statement of faith and principles, and because she did not feel that she would have to compromise her Christian standards at PCC as opposed to the college in Mobile.
Like the college-bound child in Brown, supra, the daughter in the instant case chose to follow a path which "is more suited to [her] goals." Brown at 470. It is unfortunate that her father does not approve of her choice; however, based upon the evidence presented pertaining to expenses at other institutions, it is probable that the trial court would have ordered a similar amount of post-minority support had she decided to attend the college of her father's choosing.
Finally, the father argues that the holding inBayliss is violative of the equal protection mandates of the United States and Alabama Constitutions.
Ala. Code 1975, § 12-3-16, mandates that we are bound by the decisions of the Supreme Court. Accordingly, we are not at liberty to act contrary to its decisions. Glass v. Hinde,504 So.2d 316 (Ala.Civ.App. 1987). The Supreme Court wrote inBayliss:
 "It is true that the imposition of this burden on divorced noncustodial parents establishes a classification with discriminatory obligations. However, . . . instead of an arbitrary, inequitable, unreasonable, or unjust classification, what exists is a package of special powers in equity that the courts, regardless of legislation, have long used to protect the interests of children of broken *Page 958 
homes and to assure that the disadvantages of divorce on these children are minimized."
Bayliss at 995. (Citations omitted.) See also Turner v. Turner,579 So.2d 1381 (Ala.Civ.App. 1991); and Thrasher, supra.
Based upon the foregoing, the judgment of the trial court is affirmed. The mother's request for a reasonable attorney's fee on appeal is granted in the amount of $500.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.