Leslie M. Cantrell (the "wife") and Jeffrey S. Cantrell (the "husband") were married in August 1992. The husband had been widowed the year before when his wife, Maryllyn, died in an airplane crash. The husband and his infant daughter sued the airline. The husband received an $850,000 lump-sum settlement in June 1991 and an annuity that provided him $4,812.50 per month for life.[1] He was also the beneficiary of his wife's $200,000 life-insurance policy. The parties lived off of these settlement and insurance moneys.
Although the wife worked as a veterinarian's technician for a brief period during the early part of the marriage, neither party worked during most of the marriage. The husband had purchased a $350,000 home in Florida before the marriage. The parties lived in this home until it was damaged by Hurricane Opal. After the Florida home was repaired, the parties sold it and reinvested the proceeds in the $325,000 marital residence in Hoover, Alabama, which they occupied until their separation in April 1999.
The husband testified that they lived off the insurance moneys, the settlement moneys, some investment profits, and the $1,100 per month in Social Security benefits received by his daughter. He testified that their normal monthly expenses varied from $8,000 to $15,000. The wife testified that she did not have control over the finances in the marriage and that, when she wanted money, she simply wrote a *Page 489 
check. The parties purchased a total of 22 automobiles[2] during the marriage; at the time of the divorce trial, they owned only 2: a Saturn automobile and a Chrysler minivan. At some point late in the marriage, the parties mortgaged their home; at trial, the outstanding mortgage balance was approximately $113,000.
During the marriage, the husband was diagnosed with multiple sclerosis ("MS"). He testified at trial that the disease was "in remission" and that he did not take any medications. He also testified that the parties had considered moving to Colorado because a cooler, drier climate would be better for his health. The wife testified that he kept the house cool because heat exacerbated the symptoms of MS.
In 1998, the parties had a son. After the son was born, the parties changed their sleeping habits. The wife testified that they began sleeping apart initially because she nursed her infant son and wanted to avoid waking the husband during the night feedings. She also testified that the arrangement was continued because the husband's health required that he sleep in a cold environment that she felt was unsuitable for the son. She explained that the husband moved to the basement; he could regulate the temperature there without interfering with the temperature in the rest of the house. The husband testified that he had felt neglected by the wife after the birth of the son because the wife slept with the son and took naps with him despite the husband's objections to that habit. He testified that he and his wife had been intimate only 3 times between the birth of the son and the trial, at which time the son was 15 months old.
The husband admitted that he began corresponding with a woman over the Internet. The friendship ultimately culminated in a sexual relationship. When the wife discovered the affair, she kicked the husband out of the marital residence. Despite their attempts at reconciliation, the parties decided that the marriage was irretrievably broken.
The husband voluntarily paid the wife some $4,763 per month in support pending the divorce trial. He paid $600 per month in child support pending the trial. The parties agreed to a division of personal property; the list of the property each was to receive was submitted at trial.
The trial court divorced the parties, and, among other things, ordered that the marital residence be sold and the proceeds divided equally, awarded the wife the minivan, awarded the husband the Saturn automobile, ordered the husband to pay $425 per month in child support, and ordered the husband to pay the wife $250 per month for 36 months as rehabilitative alimony. The wife appeals. She argues that the trial court should have awarded her a portion of the husband's $4,800 monthly annuity because, she argues, it is marital property subject to division; that the award of alimony was an abuse of discretion; and that the child-support award does not comply with the child-support guidelines in Rule 32, Ala. R. Jud. P.
The trial court is afforded a wide degree of discretion in dividing the marital assets of the parties upon divorce. Moody v. Moody, 641 So.2d 818 (Ala.Civ.App. 1994). The only limitation on that discretion is that the division of property be equitable under the circumstances of the particular case, and the task of determining what is equitable falls to the trial court. Ross v. Ross, 447 So.2d 812 *Page 490 
(Ala.Civ.App. 1984). This court must consider the issues of property division and alimony together when reviewing the decision of the trial court, Albertson v. Albertson, 678 So.2d 118, 120 (Ala.Civ.App. 1995), and, because the facts and circumstances of each divorce case are different, this court must also consider the particular facts and circumstances of the case being reviewed. Murphy v.Murphy, 624 So.2d 620, 623 (Ala.Civ.App. 1993). In making the division, the trial court may consider several factors, including the parties' respective present and future earning capacities, their age and health, their conduct, the duration of the marriage, and the value and type of marital property. Lutz v. Lutz,485 So.2d 1174 (Ala.Civ.App. 1986). The property division made by the trial court will not be set aside on appeal absent a palpable abuse of that discretion. Id.
Although we agree that the husband's annuity is marital property, see § 30-2-51, Ala. Code 1975, we do not conclude, as the wife apparently has, that the trial court considered the annuity the separate property of the husband and therefore did not award her a portion of it. The parties clearly testified that they had lived off the husband's annuity and the moneys he received as a result of his first wife's death. The husband also testified that the parties had spent all of the lump-sum settlement moneys, any investment proceeds, and all of the insurance proceeds. He testified that he had bought a house for his mother and that he had loaned some money to friends who were insolvent or bankrupt. Although the wife disputes the fact that the settlement moneys were exhausted, she produced no evidence indicating that they were not, because, as she testified, she had no control over or knowledge of the parties' finances. We conclude that the trial court's decision not to award the wife a particular portion of the annuity was not an abuse of discretion, because the annuity is the husband's sole means of support, and, in light of the husband's health, he may well need access to that money for his future care.
However, we agree with the wife that the $250 per month rehabilitative-alimony award is so low as to constitute an abuse of discretion under the facts of this case. The husband's MS is, according to his own testimony, in remission. He was admittedly guilty of adultery. The wife has no appreciable skills and spent most of the marriage serving as mother to the husband's daughter from his first marriage. She wishes to afford their son the same attention. Even if the wife were to find employment, she would likely earn only the minimum wage and could not afford to put the son in daycare. The husband is able to pay more than $250 per month in alimony at this time. We reverse the trial court's award of alimony and instruct the trial court, on remand, to reconsider the amount awarded.
The wife also argues that the award of child support does not comply with the child-support guidelines in Rule 32. The husband's monthly income is $4,800. According to the tables in the appendix to Rule 32, the husband's child-support obligation should be $635 per month. The trial court awarded only $425. The trial court did not state any reason for deviating from the guidelines, as is required by Rule 32(A)(ii). In addition, the trial court did not include in the record a completed CS-42 form, which is required by Rule 32(E). See Martin v. Martin,637 So.2d 901, 902 (Ala.Civ.App. 1994). For these reasons, we reverse the judgment of the trial court as it relates to child support and direct that it complete a CS-42 form and that it either order the husband to pay $635 per month as child support or explain its reason for ordering less support than would be required by the guidelines.[3] *Page 491 
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Robertson, P.J., and Monroe and Thompson, JJ., concur.
Yates, J., concurs in the result.
[1] The annuity is guaranteed for 20 years. If the husband dies before the expiration of the 20-year period, the annuity proceeds will be distributed to his named beneficiaries or his estate.
[2] The parties purchased the following automobiles during the marriage: a Porsche 911 Cabriolet; a Mercedes E300; a Lotus Esprit, which was a wedding present from the husband to the wife; a Porsche 928; a Chevrolet Blazer; a Range Rover; a Porsche 911 Roadster; a Chevrolet conversion van; a Lincoln Continental, which was given to the wife's father; a Cadillac Sedan De Ville; a BMW 540; a Ford Explorer; a Mercedes 500 SL; a 32-foot recreational vehicle; a second Range Rover; a Lexus SC400; a Land Rover Discovery; a Jaguar XJS Convertible; a Jaguar XJ6; a Chrysler Town and Country LXi minivan; a Chevrolet Suburban; and a GMC Jimmy.
[3] The wife also argues that the court should have imputed to the husband a gross income of $7,015.31 because his income is tax-free and the guidelines are based on gross income, not net income. The wife cites no persuasive authority for this contention, so we decline to consider her argument. See Rule 28, Ala.R.App.P.;Messer v. Messer, 621 So.2d 1343, 1344 (Ala.Civ.App. 1993).