885 So.2d 146 (2003)
William Scott TENEYCK
v.
Christine Ann TENEYCK.
Christine Ann TenEyck
v.
William Scott TenEyck.
2020011.
Court of Civil Appeals of Alabama.
October 10, 2003.
Certiorari Denied January 16, 2004.
*149 Joshua J. Lane, Anniston, for appellant/cross-appellee William Scott TenEyck.
George A. Monk of Brooks, Harmon & Monk, LLC, Anniston, for appellee/cross-appellant Christine Ann TenEyck.
Alabama Supreme Court 1030188.

On Application for Rehearing
CRAWLEY, Judge.
The opinion of this court issued July 11, 2003, is withdrawn, and the following is substituted therefor.
William Scott TenEyck ("the husband") and Christine Ann TenEyck ("the wife") were married in October 1996 after a 12-year relationship. The parties met when both were working for a truck-driving school in Arkansas. Both parties had children from prior relationships; the husband had three sons, and the wife had a daughter, who the husband later adopted. The parties had one son, who was born in March 1997. The parties separated on December 30, 2000.
The husband has a high-school education. He is a member and owns a majority interest in Alabama Driver's Academy, LLC ("the Academy"), which operates a truck-driving school. At the time of trial, the Academy had two campuses in Alabama  one in Eastaboga and one in Mobile. The Academy began operations in October 1996. Although the testimony on the amount of assistance provided to the Academy by the wife is disputed, the wife did assist the husband in the start-up of the business by typing school catalogs, researching financial issues, and preparing a building for use as a truck-driving school and as a dormitory for students. The husband characterized the wife's contributions to the Academy as "slim to none," while the wife insisted that her assistance was more substantial, stating that without her assistance and her income during the early days of the business, the Academy would not have existed.
When the Academy first opened in October 1996, the husband and two other people were members in the LLC. However, in 1997, the husband bought out the other members' interests. He testified that he then made his wife a member of the LLC because Alabama law required two members in order to form an LLC. He testified that he assigned the wife a 1% membership in the LLC because he thought that was equal to her contribution to the Academy. He is the only other member of the LLC, retaining a 99% membership interest. The wife testified that she knew the husband had made her a member in the LLC, but she stated that she had not read the amended operating agreement and was not aware of the percentage of membership he had assigned her. She said she had trusted her husband and had been supportive of what she considered a joint enterprise, since they had discussed earlier in their relationship their dream of owning their own truck-driving school.
*150 During the first few years of business, the Academy struggled; in 1998, for example, the Academy posted a loss of $11,000. However, in 2000, the Academy posted earnings of $336,000. The husband testified, however, that since the terrorist attacks of September 11, 2001, the Academy had experienced a dramatic decrease in enrollment. In addition, he explained that a company known as Student Financial Corporation ("SFC"), which had financed tuition for students of the Academy, had gone out of business in February 2002; he said that SFC still owed the Academy $430,000. The husband testified that the Academy had dropped its tuition from an all-time high of $7,995 to $3,995 if a student paid the tuition or $5,995 if the student financed the tuition through Partners' Financial Services, Inc., another finance company with which the Academy did business.
The husband testified that his salary was $2,000 per week; he said that he was not always paid and that he had, shortly before the trial, reduced his salary to $1,000 per week. However, between January 2001 and August 2001, the husband withdrew from the Academy's account $534,289. After withdrawals by the wife of $61,000 during the same period, the account still contained $132,000.
The Academy leased one parcel of property and purchased another parcel in Mobile in 2000. The husband testified that he leased the first parcel for $340,000; he testified that he paid $60,000 as a "down payment" on that property. He testified that he had not terminated his lease on the first parcel because he "had money in it." The husband further testified that a better parcel became available shortly after he leased the first parcel, so he purchased the second parcel. The cost of the second parcel was $220,000; the husband testified that he paid $30,000 as a down payment on the second parcel and that he made monthly payments of $2,400 on what he testified was a $205,000 balance as of the date of the trial. A structure to house the Academy's Mobile campus was built on that parcel; its cost was $163,000, of which approximately $72,000 was still outstanding.
The husband also leases a racetrack facility known as Green Valley Race Track for $500 per race. He has an option to buy the property for $400,000. During the term of his lease, which began in 1998, the husband has spent over $500,000 (some testimony in the record indicates that the husband has spent $800,000) for improvements to the racetrack property. The husband's testimony reveals that the races at the track seldom generate profit of more than a few thousand dollars per race weekend; more often, however, the events barely break even.
The wife has a master's degree.[1] She taught school when the parties lived together in Indiana before moving to Alabama in 1996. She also taught in the Talladega County school system from the fall of 1986 until the end of May 2000. The wife made $36,000 per year in her last teaching position. At the time of trial she was employed part-time, teaching a calculus class for $325 per month.
The parties lived in a portion of the building used as the Academy's Eastaboga campus. The building was an old schoolhouse consisting of three wings. The parties' residence was in one of the wings. Accordingly, the Academy owns the parties' residence. In addition, the Academy *151 owns several of the automobiles used by the parties, including a 2001 Mercedes, which cost $95,000, and a 1986 Mercedes, which cost $36,000. Both cars were purchased in 2000.
After a trial, the trial court divorced the parties. In it original divorce judgment, the trial court awarded the husband all interest in the Academy. The trial court awarded the wife $500,000 as alimony in gross, which the trial court found represented her ownership interest in the Academy. The judgment also awarded the wife $700 per month in periodic alimony. The trial court permitted the wife to have the use of the marital residence until the husband had paid $100,000 of the alimony-in-gross award. The judgment required the wife to move within 60 days of receiving the $100,000. The parties were awarded joint legal custody of their son and daughter, with the wife having sole physical custody; the husband was ordered to pay $1,079 per month in child support. The judgment also awarded postminority educational support for the daughter. Both parties filed postjudgment motions. After a hearing, the trial court amended the judgment. The amended judgment awarded the wife $500,000 as alimony in gross; awarded the wife a lien against the husband individually and against the Academy to secure the alimony-in-gross award; set up a schedule whereby $25,000 of the alimony-in-gross award would be paid within 60 days of the date of the judgment and $2,500 installments would be paid monthly thereafter; and reserved jurisdiction to modify the amount of the monthly payment. The amended judgment further permitted the wife to remain in the marital residence until $25,000 of the alimony-in-gross award was paid and denied the wife periodic alimony; however, the trial court reserved jurisdiction over the issue of periodic alimony. Finally, the amended judgment denied postminority educational support for the daughter on the basis that Ex parte Bayliss, 550 So.2d 986 (Ala.1989), violates the separation-of-powers doctrine and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; the trial court specifically relied upon Chief Justice Moore's dissent in Ex parte Tabor, 840 So.2d 115, 123 (Ala.2002) (Moore, C.J., dissenting), in which the Chief Justice attacked the holding of Ex parte Bayliss on both of those grounds. Both parties appeal.

I. The Husband's Appeal
The husband raises three issues on appeal. He first argues that the trial court's $500,000 alimony-in-gross award is excessive. He then argues that the alimony-in-gross award was mislabeled by the trial court and that it is, in actuality, an award of periodic alimony, which he also argues is excessive. Finally, the husband argues that the trial court lacked jurisdiction to order a lien against the property of the Academy.

A. Whether the Trial Court's Award of $500,000 to the Wife Is Alimony in Gross or Periodic Alimony
Our supreme court has explained the difference between periodic alimony and alimony in gross. Hager v. Hager, 293 Ala. 47, 299 So.2d 743 (1974). Alimony in gross is considered "compensation for the [recipient spouse's] inchoate marital rights [and] ... may also represent a division of the fruits of the marriage where liquidation of a couple's jointly owned assets is not practicable." Ex parte Hager, 293 Ala. at 54, 299 So.2d at 749. An alimony-in-gross award "must satisfy two requirements, (1) the time of payment and the amount must be certain, and (2) the right to alimony must be vested." Cheek v. Cheek, 500 So.2d 17, 18 (Ala.Civ.App.1986). It must also be payable out of the present estate of the paying spouse as it *152 exists at the time of the divorce. Ex parte Hager, 293 Ala. at 55, 299 So.2d at 750. In other words, alimony in gross is a form of property settlement. Ex parte Hager, 293 Ala. at 54, 299 So.2d at 749. An alimony-in-gross award is generally not modifiable. Id.
Periodic alimony, on the other hand, "is an allowance for the future support of the [recipient spouse] payable from the current earnings of the [paying spouse]." Ex parte Hager, 293 Ala. at 55, 299 So.2d at 750. Its purpose "is to support the former dependent spouse and enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until that spouse is self-supporting or maintaining a lifestyle or status similar to the one enjoyed during the marriage." O'Neal v. O'Neal, 678 So.2d 161, 164 (Ala.Civ.App.1996) (emphasis added). Periodic alimony is modifiable based upon changes in the parties' financial conditions or needs, such as an increase in the need of the recipient spouse, a decrease in the income of the paying spouse, or an increase in the income of the recipient spouse. See Tibbetts v. Tibbetts, 762 So.2d 856, 858 (Ala.Civ.App.1999). The paying spouse's duty to pay periodic alimony may be terminated by petition and proof that the recipient spouse has remarried or is cohabiting with a member of the opposite sex. Ala.Code 1975, § 30-2-55.
This court has considered other cases in which the type of alimony awarded was in question. See Singleton v. Harp, 689 So.2d 880 (Ala.Civ.App.1996); Barber v. Barber, 684 So.2d 150 (Ala.Civ.App.1996); Laminack v. Laminack, 675 So.2d 479 (Ala.Civ.App.1996); Stockbridge v. Reeves, 640 So.2d 947 (Ala.Civ.App.1994); Vainrib v. Downey, 565 So.2d 647 (Ala.Civ.App.1990); and Cheek v. Cheek, 500 So.2d 17 (Ala.Civ.App.1986).[2] In each of those cases, we were concerned with the trial court's construction of a provision contained in the parties' separation agreement, which had been incorporated into the divorce judgment. In the present case, however, we are concerned with an original interpretation of the trial court's judgment. However, those cases still provide guidance for determining when a provision awards periodic alimony or alimony in gross. "When the type of award is not specifically stated in the divorce [judgment], the source of payment and its purpose are important factors in determining whether an award is periodic alimony or alimony in gross." Cheek, 500 So.2d at 19.
The husband points out that the trial court's reservation of jurisdiction to modify the amount of the monthly payments prevents the award from being certain as to time. He also argues that this reservation of jurisdiction prevents the award from being vested. Thus, he concludes, the trial court's award is periodic alimony.
However, the trial court's intent to award $500,000 to the wife as alimony in gross is clearly discernable from the judgment. The trial court indicates that the parties own no real property and that the only item of substantial value in the marriage is the Academy. The trial court mentions that its $500,000 award is for the wife's interest in the business, calls the award alimony in gross, and also addresses the issue of periodic alimony. The amount of the award, $500,000, is certain, and, *153 despite the husband's argument, the wife's right to the award is vested. The reservation of jurisdiction does not prevent the award from being vested, as it reserves to the trial court the right to change the amount of the monthly payments and not the amount of the entire award. The wife's entitlement to the $500,000 is made clear from the context of the award. The reservation of jurisdiction to modify the amount of the monthly payments, however, does prevent the award from being certain as to time. A decrease in the amount of the monthly payments would extend the period of time over which the award would be paid. Because the trial court's award, while clearly meant to be alimony in gross, is not certain as to time, we reverse the award of alimony in gross and instruct the trial court on remand to delete from the judgment the statement in Paragraph XI.C. of the judgment reserving to the court jurisdiction to modify the monthly payments.

B. Whether the Trial Court Had Jurisdiction to Impose a Lien on the Academy's Property
The trial court's judgment secures the wife's alimony-in-gross award with a lien against the husband's individual property and against the Academy's property. The husband argues that the trial court had no jurisdiction to impose a lien on the Academy's property because the Academy was not a party to the divorce action and because, as an LLC, the Academy, and not the husband, owns the property subject to the lien. We agree.
The wife argues that we have affirmed judgments that have secured alimony-in-gross awards to a recipient spouse by imposing a lien against certain property. See Gibbs v. Gibbs, 653 So.2d 300 (Ala.Civ.App.1994). In Gibbs, the trial court imposed a lien on the husband's presently owned or after-acquired real and personal property, including contract rights and accounts receivables; restrained him from disposing of any assets he owned without the court's permission; and restrained him "`from permitting the corporations which he controls through his majority ownership from transferring or disposing of any property without permission from this Court except in the ordinary course of business and under such circumstances as would not affect the net worth of any such corporation.'" Gibbs, 653 So.2d at 301. The wife argues that the trial court in the present case, like the trial court in Gibbs, had the power to impose a lien to secure her alimony-in-gross award. She points out that the husband is now the sole member of the LLC because her 1% interest was extinguished by the divorce judgment. Thus, she apparently reasons, the husband and the LLC are in effect the same entity.
As the husband points out, Ala.Code 1975, § 10-12-23(b), states that a member of an LLC has no interest in property owned by the LLC. In addition, the Academy was not a party to the divorce proceeding. It was never served; therefore, the trial court's judgment was rendered without jurisdiction over the Academy. Cooper v. Watts, 280 Ala. 236, 240, 191 So.2d 519, 522 (1966). Although the trial court could have, like the trial court in Gibbs, ordered that the husband, as the member owning a majority interest in the Academy, dispose of no assets of the Academy that would decrease the net worth of the Academy, the trial court was without jurisdiction to impose a lien on the Academy's property. Therefore, we must reverse that portion of the trial court's judgment imposing a lien on the Academy's property, and we instruct the trial court on remand to revise that portion of its judgment awarding a lien to secure the alimony-in-gross award to reflect the principles stated in this opinion.

*154 C. Whether the $500,000 Alimony-in-Gross Award is Excessive

The husband argues that the award of $500,000 as alimony in gross to the wife is excessive. He argues that the wife's interest in the Academy, the only significant asset of the marriage, should be limited to the 1% interest he assigned her when he bought out the other members in 1997. Thus, he says, the wife's interest in the Academy, if the Academy is valued at $3,085,443, as the trial court expressly found in its judgment, is $30,855.
The trial court is afforded a wide degree of discretion in dividing the marital assets of the parties upon divorce. Cantrell v. Cantrell, 773 So.2d 487, 489 (Ala.Civ.App.2000). The only limitation on that discretion is that the division of property be equitable under the circumstances of the particular case, and the task of determining what is equitable falls to the trial court. Ross v. Ross, 447 So.2d 812, 813 (Ala.Civ.App.1984). In making the division, the trial court may consider several factors, including the parties' respective present and future earning capacities, their ages and health, their conduct, the duration of the marriage, and the value and type of marital property. Lutz v. Lutz, 485 So.2d 1174, 1176 (Ala.Civ.App.1986). A property division made by a trial court will not be set aside on appeal absent a palpable abuse of its discretion. Id.
The husband says that the Academy was not in the same financial position at the time of the divorce trial as it had been during the two previous years. He says that the evidence at trial did not establish that he was able to consistently earn the amount of money he had drawn from the company in 2001. He also states that the 1% interest in the Academy that he assigned to the wife, in his opinion, corresponded to the wife's contribution to the Academy.
The husband's apparent belief that the 1% interest in the Academy that he assigned to the wife is conclusive of her interest in the Academy is misguided. After May 2000, the Academy generated the only income for the parties; even before the wife resigned her teaching position in May 2000, the parties used the income generated by the Academy to support the family. In 2001, the parties drew from the Academy nearly $600,000. The Academy is owned by the parties and is the only significant marital asset; the trial court was free to include its worth in its computation of the parties' marital assets and its equitable distribution of those assets. The trial court's alimony-in-gross award is approximately 16% of the value the trial court assigned to the Academy. Under these circumstances, we do not agree with the husband that an alimony-in-gross award of 16% of an asset worth over $3 million is an excessive award.

II. The Wife's Appeal
The wife appeals certain aspects of the trial court's judgment. She argues that the $500,000 alimony-in-gross award is insufficient and inequitable. She further argues that the trial court abused its discretion in failing to award her periodic alimony in light of her being employed only part-time at the time of trial. She argues that the trial court abused its discretion in determining the child-support award, which was based on the uppermost Rule 32, Ala. R. Jud. Admin., child-support guideline amount for two children, because the parties' income exceeds the uppermost limit of the guidelines and because she presented evidence of the children's needs and expenses. She also argues that the trial court erred by holding Ex parte Bayliss unconstitutional and in failing to award the daughter postminority educational support on that basis. Finally, the wife argues that the trial *155 court should have ordered the husband to pay her attorney fees.

A. Whether the $500,000 Alimony-in-Gross Award Is Insufficient and Inequitable
The wife's response to the husband's argument that the alimony-in-gross award is excessive is to insist that the award is not sufficient. She argues that the major asset of the parties, the Academy, is worth over $3 million. The marital residence and at least two of the automobiles used by the parties are owned by the Academy, and those assets now essentially belong to the husband by virtue of the trial court's award of the Academy to the husband. She concludes that the $500,000 award pales in comparison to the $2.5 million value of the assets the husband was awarded.
This court is mindful of our supreme court's admonition that, when reviewing a property division, we are not to substitute our judgment for that of the trial court. Ex parte Durbin, 818 So.2d 404, 409 (Ala.2001); Ex parte Drummond, 785 So.2d 358, 363 (Ala.2000). As mentioned above, the trial court may consider several factors, including the parties' respective present and future earning capacities, their ages and health, their conduct, the duration of the marriage, and the value and type of marital property, when dividing the marital property. See Lutz, 485 So.2d at 1176. While the testimony at trial established that the Academy was valued at over $3 million, some evidence indicated that the Academy would not continue to generate the income it had generated in 2001. The Academy's profitable years were 2000 and 2001, the year prior to the separation and the year prior to the divorce trial, respectively. The husband's evidence indicating that he had reduced tuition, that enrollment had declined, and that the bankruptcy of a student-credit agency had seriously affected the trucking-school industry could have convinced the trial court that the net worth of the Academy would likely decline in 2002 and in the years ahead. In addition, the fact that the wife is only 39 years old, is in good health, has a master's degree, and is employable as a teacher could have led the trial court to the conclusion that the earning capacities and future prospects of the parties were not so divergent that more alimony in gross was warranted to offset the parties' disparate incomes.
The wife also argues that evidence indicating that the husband had committed adultery should have weighed in her favor in the property division. Indeed, as the wife argues, the trial court may consider the fault of the parties when dividing the marital property, even if the divorce is not granted on the basis of fault. Ex parte Drummond, 785 So.2d 358, 363 (Ala.2000). The trial court expressly declined to divorce the parties on the ground of adultery, stating that it was not required to do so "even granting for the sake of argument that [the husband's adultery] had been proven to the satisfaction of the court." In light of the evidence, and given the presumption in favor of the trial court's resolution of conflicting evidence, we cannot question the trial court's decision not to award the wife a larger amount as alimony in gross on the basis of her allegations of the husband's adultery. Accordingly, we affirm the $500,000 award of alimony in gross.

B. Whether the Trial Court Should Have Awarded the Wife Periodic Alimony
The wife argues that the trial court should have awarded her periodic alimony. She says that the husband's income, which the trial court determined to have been, in the past, on average, over *156 $29,000 per month, far exceeds her own, especially since she was not employed full-time at the time of trial. The husband argues that the trial court properly declined to award the wife periodic alimony. He says that the alimony-in-gross award places the wife in a far better financial position than she was in during the marriage. He further notes that an additional award of periodic alimony would be inequitable in light of the fact that the wife has a master's degree and is capable of being employed as a teacher while he has only a high-school education and, despite the recent success of the Academy, he has not consistently earned a large income and will likely not continue to enjoy the profits earned in 2000 and 2001 as the Academy is facing a dim financial future.
Generally, an award of alimony is entrusted to the sound discretion of the trial court, and that award will not be set aside absent an abuse of that discretion. O'Neal, 678 So.2d at 164. In making the decision to award alimony, the trial court may consider several factors, including the parties' respective present and future earning capacities, their ages and health, their conduct, the duration of the marriage, and the value and type of marital property. Lutz, 485 So.2d at 1176. "[T]he purpose of periodic alimony is to support the former dependent spouse and enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until that spouse is self-supporting or maintaining a lifestyle or status similar to the one enjoyed during the marriage." O'Neal, 678 So.2d at 164.
The trial court notes in its judgment that the husband had testified that his income had decreased dramatically in the recent past. The trial court did not, however, indicate the amount of that decrease or the actual amount of income the trial court determined the husband to be earning at the time of trial. The husband had indicated on his child-support income affidavit that his current monthly income was $8,666.67. The testimony at trial revealed that the husband took large draws, seemingly at will, from the Academy.
The wife, however, although capable of earning up to $36,000 annually as a full-time teacher, made $325 per month at the time of trial. She will be required to move from the marital residence and to set up a home with the parties' children elsewhere. She will be paid an initial $25,000 lump-sum payment of alimony in gross and will receive monthly payments of $2,500 until the alimony-in-gross award is paid in full. The wife testified that her estimated expenses for each month, based upon a projected rent or mortgage payment of $1,500, and including expenses for private-school tuition for the parties' son, for eating out, for entertainment the family typically enjoyed, and for yearly vacations, would be $6,780.
Despite the husband's testimony that his income has decreased dramatically, the husband's income affidavit shows that he makes nearly triple the $3,000 per month the trial court imputed to the wife. At the time of the divorce, the wife actually earned only $325 per month. Although the $2,500 monthly alimony-in-gross payment will cover a portion of the wife's expenses, she will encounter several expenses in setting up a new household. In addition, the wife was not employed full-time as of the date the amended judgment was entered in September 2002; because she would be seeking a job as a teacher, the wife would have faced a more difficult time finding a full-time position because the school year had already begun and the schools would have already employed teachers for the school year. Under the circumstances of this case, we see no reason *157 for the trial court to have changed its original award of $700 per month in periodic alimony to the wife; accordingly, we reverse the trial court's judgment insofar as its denies the wife periodic alimony, and, upon remand, the trial court may determine, based on its view of the wife's exhibit outlining her expenses, what amount of periodic alimony would be appropriate to aid and support the wife as she establishes a new household for herself and the parties' children.

C. Whether the Trial Court's Child-Support Award Is in Error
The wife argues that the trial court's child-support award of $1,079 per month is in error because the parties' income exceeds the uppermost income level of the child-support guidelines and because she presented evidence of the children's expenses at trial. The trial court found that the husband's income had been, on average, over $29,000 per month. However, the CS-42 child-support-guideline form contained in the record computes child support based on an income of $7,000 per month for the husband and $3,000 per month for the wife. No evidence at trial indicates that the father earns $7,000 per month. The husband's earnings are nearly impossible to compute because, in addition to his salary, which he reduced to $1,000 per week before trial and which he states he is not always paid, he apparently draws funds from the Academy at will. His income affidavit, however, does state his monthly income as being $8,666.67. At the time of trial, the wife made $325 per month for a class she taught; the $3,000 income figure for the wife on the CS-42 form is clearly imputed income based on the wife's former salary of $36,000 per year.
At trial, the wife testified to and admitted an exhibit outlining the family expenses. Although the husband disputed some of the figures presented by the wife (for example, the wife had used an estimated house payment because she would need to find a place to live, and the husband argued that she did not actually have such an expense), the wife's figures indicated that the children's expenses were approximately $2,690 per month. Included in this figure were the cost of a yearly family vacation, the cost of eating out over the course of one year, the expenses associated with activities at a lake during the summer months, and other entertainment expenses throughout the year. The wife testified that the family had routinely eaten out at least once during the week, that they had often spent the weekends at a lake enjoying the use of the family's boat and personal watercrafts, and that they had often enjoyed movies and bowling as family entertainment activities.
When the parties' income exceeds the uppermost level of the child-support guidelines, the trial court must use its discretion in determining the amount of child support to award. Dyas v. Dyas, 683 So.2d 971, 973 (Ala.Civ.App.1995), aff'd and remanded, 683 So.2d 974 (Ala.1996).
"When the combined adjusted gross income exceeds the uppermost limit of the child support schedule, the amount of child support awarded must rationally relate to the reasonable and necessary needs of the child, taking into account the lifestyle to which the child was accustomed and the standard of living the child enjoyed before the divorce, and must reasonably relate to the obligor's ability to pay for those needs. To avoid a finding of an abuse of discretion on appeal, a trial court's judgment of child support must satisfy both prongs."
Dyas, 683 So.2d at 973-74 (footnote and internal citation omitted).
The trial court's judgment states that "there was no evidence presented to the *158 Court that the needs of the children exceed or are less than the maximum support pursuant to the guidelines." Based on that statement, the trial court awarded the maximum amount of child support for two children under the guidelines. However, as mentioned above, the wife did present evidence of the expenses associated with the children. Although an award of the maximum amount under the guidelines, despite the fact that the parties' income exceeds the uppermost limit of the guidelines, in and of itself, is not necessarily an abuse of the trial court's discretion, see Bridges v. Bridges, 607 So.2d 289, 291 (Ala.Civ.App.1992) (affirming an award of the maximum amount of child support under the guidelines, despite the fact that the father's income exceeded the uppermost limit of the guidelines, in consideration of the totality of the obligations owed by the father), we find that the trial court's finding of fact in this case  specifically, that the court was not presented with evidence that the needs of the children exceeded the maximum amount of support under the guidelines  is not supported by the evidence. Therefore, we reverse the trial court's award of child support, and we remand the case with instructions for the trial court to consider the evidence presented by the wife and to award an appropriate amount of child support based upon its view of that evidence. Our reversal is not a comment on the evidence. We express no opinion on whether the evidence submitted by the wife would require an award of child support exceeding the maximum guideline amount; such a decision is left to the trial court upon its consideration of the evidence on remand.

D. Whether the Trial Court Erred in Holding Ex Parte Bayliss Unconstitutional

The wife argues that the trial court erred by denying postminority educational support for the daughter by holding Ex parte Bayliss, 550 So.2d 986 (Ala.1989), unconstitutional. The trial court's judgment states that it adopts Chief Justice Moore's dissenting opinion in Ex parte Tabor, 840 So.2d 115, 123 (Ala.2002) (Moore, C.J., dissenting). It further states the following:
"[T]he appellate courts have at least two options regarding this court's ruling, which are:
"a. they can rule that this court has no authority to make this ruling and require this court to enter an order on postminority [educational] support in compliance with Bayliss; or
"b. they can address the issue as to whether the Supreme Court, as it was comprised in 1989 overstepped the constitution[al] boundary between the legislature['s] duty to make laws and the court's duty to rule on those laws."
We choose option a. The supreme court and this court have considered and rejected the equal-protection arguments raised by the husband. See Ex parte Bayliss, 550 So.2d at 995; Stack v. Stack, 646 So.2d 51, 55 (Ala.Civ.App.1994); Entrekin v. Entrekin, 627 So.2d 955, 957-58 (Ala.Civ.App.1993); Turner v. Turner, 579 So.2d 1381, 1382 (Ala.Civ.App.1991). In addition, this court is bound by the decisions of our supreme court. Ala.Code 1975, § 12-3-16. We are not at liberty to overrule or modify those decisions. Thompson v. Wasdin, 655 So.2d 1058 (Ala.Civ.App.1995). The trial court's judgment denying postminority educational support on the basis that Ex parte Bayliss is unconstitutional is therefore reversed, and the cause is remanded for the trial court to consider the request for postminority educational support in compliance with the principles established in Ex parte Bayliss and its progeny.

E. Whether the Trial Court Abused Its Discretion in Failing to Award the Wife Attorney Fees
The wife's final argument is that the trial court abused its discretion by *159 failing to award her attorney fees. The parties stipulated to the reasonableness of the attorney fees charged by the wife's counsel. She argues that the failure to award her attorney fees, coupled with the structuring of the alimony-in-gross award, leaves her with insufficient funds to relocate her family, to pay her debts, and to pay her attorney fees.
The husband points out that the wife withdrew $61,000 from the Academy's account during the parties' separation. She testified at trial that she used some of that money to pay her attorney fees. The husband also testified that he had given the wife $1,500 to use to pay her attorney fees during the separation. The trial court did not attribute fault in the divorce, and the wife is capable of being employed as a teacher earning approximately $36,000 per year.
"It is well settled that the award of attorney fees in a divorce action is a matter within the sound discretion of the trial court. See Slater v. Slater, 587 So.2d 376 (Ala.Civ.App.1991); Holmes v. Holmes, 487 So.2d 950 (Ala.Civ.App.1986). In determining whether to award an attorney fee, the trial court should consider the conduct of the parties, the financial circumstances of the parties, and the outcome of the litigation. Murphree v. Murphree, 579 So.2d 634, 637 (Ala.Civ.App.1991)."
McClelland v. McClelland, 841 So.2d 1264, 1272 (Ala.Civ.App.2002). Accordingly, we conclude that the trial court's failure to award the wife attorney fees was not an abuse of discretion warranting reversal of the trial court's judgment.
OPINION OF JULY 11, 2003, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., concurs.
THOMPSON, J., concurs in the result.
MURDOCK, J., concurs in part and concurs in the result in part.
PITTMAN, J., concurs in part and dissents in part.
MURDOCK, Judge, concurring in part and concurring in the result in part.
I concur in all aspects of the main opinion except as it relates to whether the alimony-in-gross award is insufficient or inequitable; as to that issue, I concur in the result.
PITTMAN, Judge, concurring in part and dissenting in part.
I agree with the main opinion that the trial court's judgment must be reversed on the issues of retaining jurisdiction over the alimony-in-gross payments, placing a lien on the Academy's property, and the constitutionality of Ex parte Bayliss, 550 So.2d 986 (Ala.1989).
I believe the judgment awarding $500,000 to the wife as alimony in gross, coupled with the wife's ability to earn a steady income and the husband's declining income, supports the trial court's judgment declining to award the wife periodic alimony. I also believe that the holding of Dyas v. Dyas, 683 So.2d 971 (Ala.Civ.App.1995), aff'd and remanded 683 So.2d 974 (Ala.1996), cited in the main opinion, is not contrary to the trial court's judgment; evidence at trial in this case indicated that, although the couple's lifestyle before the divorce included numerous luxuries, the husband's ability to pay for those luxuries was diminishing.
Moreover, to the extent that the trial court awarded the maximum amount of child support under the child-support *160 guidelines, after imputing total gross income to the husband and to the wife that exceeded the uppermost limit of those guidelines, I cannot agree that such an award amounted to an abuse of discretion. See Bridges v. Bridges, 607 So.2d 289 (Ala.Civ.App.1992). Because I would defer to the trial court's judgment as to the resolution of those two issues, I must respectfully dissent as to the reversal of the trial court's judgment on those issues.
NOTES
[1] Presumably, the wife's master's degree is in education. The record does not clearly indicate that fact, however.
[2] In Singleton, Stockbridge, Vainrib, and Cheek, this court affirmed a trial court's determination that a provision in the parties' divorce judgment provided alimony in gross and not periodic alimony. In Barber we reversed a trial court's determination that the provision provided alimony in gross rather than periodic alimony. In Laminack we affirmed a trial court's determination that the provision awarded periodic alimony.