Elbert Max Sanders and Martha Burgard were divorced on June 29, 1992. The divorce judgment ordered Sanders to pay Burgard $160,000 as alimony in gross, to be paid in four payments of $40,000 each. The payments were to be made annually, with the first payment due on July 1, 1993, and the last payment due on July 1, 1996. The judgment also ordered Sanders to pay Burgard periodic alimony in the amount of $4,000 per month.
On November 13, 1995, Sanders moved for a modification of the divorce judgment, requesting that the court terminate the periodic alimony payments because of Burgard's alleged cohabitation with a member of the opposite sex. Sanders continued to make periodic alimony payments until July 3, 1996, when he began paying the periodic alimony into an escrow account pending the court's final determination on his modification motion. Sanders also sought to pay into the escrow account the final $40,000 payment of alimony in gross that was due on July 1, 1996. Burgard objected to the use of the escrow account. The trial court entered an order holding that Sanders could pay the periodic alimony into the escrow account, but that he had to pay Burgard the final $40,000 of alimony in gross. Sanders appealed to this court, and we remanded the case to allow the trial court to enter an order in compliance withBrown v. Whitaker Contracting Corp., 681 So.2d 226
(Ala.Civ.App. 1996), within 21 days. However, before the 21-day period had expired, the trial court entered a final judgment on the modification.
In its order, the trial court stated:
 "The Court finds that ample evidence was presented to establish that Martha Burgard began cohabiting with Harold Johnston prior to the date of the Petition for Modification filed by Max Sanders on November 13, 1995."
The trial court's order provided that the periodic alimony Sanders had paid into the escrow account was the property of Sanders. In addition, the court rejected Sanders's request to be allowed to set off the amount of periodic alimony he paid while Burgard was cohabiting, against the $40,000 gross alimony payment, which had apparently not been paid in spite of the court's previous order. Burgard appeals.
Thus, there are two appeals before this court. The first is Sanders's appeal that he attempted to bring while the case was still pending and that is now before this court because of the entry of a final judgment. The second appeal is Burgard's appeal from the final judgment.
First, we address Sanders's appeal. Sanders argues that the trial court should have allowed him to set off the amount of periodic alimony he paid while Burgard was cohabiting, against the $40,000 alimony in gross that was due in July 1996. In support of his position, Sanders cites this court's opinion inWood v. Wood, 682 So.2d 1386 (Ala.Civ.App. 1996). We agree with Sanders that the facts in his case are almost identical to those in Wood; however, we cannot follow the Wood decision. *Page 810 
In Wood the husband's obligation to pay periodic alimony was terminated by the trial court because of the wife's cohabitation. The husband contended that he had overpaid alimony because he had paid alimony while the wife was cohabiting. We held that the husband was entitled to set off the amount he had overpaid in periodic alimony against his arrearages in periodic alimony and gross alimony, and against his future gross alimony payments.
The relevant statute provides:
 "Any decree of divorce providing for periodic payments of alimony shall be modified by the court to provide for the termination of such alimony upon petition of a party to the decree and proof that the spouse receiving such alimony has remarried or that such spouse is living openly or cohabiting with a member of the opposite sex. This provision shall be applicable to any person granted a decree of divorce either prior to April 28, 1978, or thereafter; provided, however, that no payments of alimony already received shall have to be reimbursed."
§ 30-2-55, Ala. Code 1975 (emphasis added). Thus, under this statute, the court can terminate periodic alimony payments because of cohabitation, but the court cannot require that periodic alimony payments already paid be reimbursed. Allowing the husband to set off the amount of periodic alimony paid while the wife was cohabiting, against the gross alimony payments owed to the wife, is the same as requiring the wife to reimburse the husband for periodic alimony overpaid. Thus, it appears that Wood directly contradicts § 30-2-55 in that it would allow the husband to set off the overpayment against gross alimony payments.
In addition, the Wood opinion also appears to contradict a long line of cases holding that gross alimony is not modifiable. For instance, this court has held:
 "A trial court may terminate an award of periodic alimony pursuant to § 30-2-55 once it has been determined that a former spouse has cohabited or lived openly with a member of the opposite sex. Section 30-2-55, however, applies only to awards of periodic alimony. Awards of alimony in gross and/or divisions of property are neither modifiable nor subject to § 30-2-55."
Tucker v. Tucker, 416 So.2d 1053, 1056-57 (Ala.Civ.App. 1982). Recently, in the case of Blackburn v. Blackburn,675 So.2d 444 (Ala.Civ.App. 1996), this court quoted this portion of the Tucker case in ruling that the trial court erred in modifying the husband's alimony-in-gross obligation based on the wife's cohabitation. Some of the other cases standing for this proposition include Prescott v. Prescott, 545 So.2d 79
(Ala.Civ.App. 1989); Cheek v. Cheek, 500 So.2d 17
(Ala.Civ.App. 1986); Hartsfield v. Hartsfield, 384 So.2d 1097
(Ala.Civ.App. 1980), cert. denied, 384 So.2d 1100 (Ala. 1980),overruled on other grounds by Ex parte Reuter, 623 So.2d 737
(Ala. 1993); and Higginbotham v. Higginbotham, 367 So.2d 972
(Ala.Civ.App. 1979).
Therefore, we conclude that a trial court may not allow the paying spouse to set off the amount of periodic alimony overpaid, because of the cohabitation or remarriage of the spouse receiving alimony, against gross alimony. Wood v. Wood,682 So.2d 1386 (Ala.Civ.App. 1996), is hereby overruled to the extent that it conflicts with our holding here.[1]
It follows that in Sanders's case, the trial court properly ruled that Sanders could not set off the amount of periodic alimony overpaid, against the $40,000 gross alimony payment that was due on July 1, 1996.
Additionally, we note that Wood is correct in stating that we have previously interpreted § 30-2-55 to mean that the obligation to pay periodic alimony ceases on the date the spouse receiving alimony began cohabiting. 682 So.2d at 1386. Yet, the legislature specifically provided that periodic alimony paid to a cohabiting or remarried spouse does not have to be repaid. However, those who pay periodic alimony are not left without options. For instance, in this case, Sanders paid periodic alimony into an escrow account pending the trial court's final ruling. Because the *Page 811 
court determined that Burgard was cohabiting, the periodic alimony paid into the account was returned to Sanders. In addition, this court has in previous opinions refused to require the paying spouse to pay periodic alimony arrearages that accrued during the other spouse's remarriage or cohabitation. See Tillis v. Tillis, 405 So.2d 938
(Ala.Civ.App. 1981) (where husband stopped paying alimony on date of wife's remarriage, he did not have to repay alimony due between date of remarriage and date of his filing petition, because obligation ceased on date of remarriage); see also Musgrove v.Hawkins, 513 So.2d 4 (Ala.Civ.App. 1987) (holding that trial court erred in ordering husband to pay wife's medical bills incurred between the date her cohabitation began and the date the petition to terminate was filed, because his obligation to pay ceased on the date the cohabitation began). Although the paying spouse will not be required to pay periodic alimony arrearages if cohabitation is proven, we do not believe that it is wise for a paying spouse to simply stop paying periodic alimony based on his or her suspicion of the other spouse's cohabitation. Such a course of action could lead to a holding of contempt, not to mention that the paying spouse could owe a considerable amount of arrearage if cohabitation was not proven. Indeed, making payments into an escrow account appears to be the better course for a person in this situation.
Next we address Burgard's appeal from the final judgment. The issue she raises is whether Sanders actually proved that she was cohabiting with a member of the opposite sex.
Pursuant to § 30-2-55, a trial court may terminate periodic alimony payments when a petition is filed and evidence is shown to prove that the spouse receiving alimony is "living openly or cohabiting with a member of the opposite sex." To establish cohabitation, one must prove some permanency of relationship, along with more than occasional sexual activity. Kennedy v.Kennedy, 598 So.2d 985 (Ala.Civ.App. 1992). Whether a former spouse is cohabiting with a member of the opposite sex is a factual determination to be made by the trial court. Perkins v.Perkins, 643 So.2d 992 (Ala.Civ.App. 1994). This court will not reverse the ruling of the trial court unless, after considering all the evidence and the reasonable inferences drawn therefrom, we conclude that the trial court's determination is plainly and palpably wrong. Id.
Burgard testified that she had an emotional and sexual relationship with Harold Johnston and that she was not involved with anyone else. She testified that Johnston spent the night at her home approximately two to three nights a week and that he worked two to four nights a week providing night security for an automobile dealership. In addition, she testified that Johnston was gone four to eight nights a month on assignments for the National Guard. Burgard also testified that she typically cooked Johnston's meals when they ate together at night. She admitted that Johnston had an automatic garage door opener for her garage, and that each of them had keys to the other's home. Burgard also testified that she had changed the ownership of her real property so that she and Johnston held it as joint tenants with the right of survivorship. In addition, Burgard had named Johnston as the beneficiary of her numerous financial investments, and she provided for Johnston to have access to her safe-deposit box. She also testified that she and Johnston took trips together annually.
A.G. Lang, a private investigator hired by Sanders, observed Burgard's home on 13 nights. Johnston was seen arriving at Burgard's home on all of these nights; he drove into her garage using the automatic garage door opener. Lang testified that he stayed outside Burgard's home all night on seven of the nights, and that on all seven occasions Johnston did not leave the home until the next morning. On the six nights that Lang did not stay all night, Johnston had not left Burgard's home by the time Lang left at approximately 1:30 a.m. On several occasions, Lang noticed that when Johnston left Burgard's home in the morning he was wearing the same clothes he had worn the previous evening.
Considering the evidence presented and all the reasonable presumptions to be drawn therefrom, we cannot say that the trial court *Page 812 
was plainly and palpably wrong in determining that Burgard was cohabiting with Johnson. Therefore, the judgment of the trial court is due to be affirmed.
AFFIRMED.
YATES, CRAWLEY, and THOMPSON, JJ., concur.
ROBERTSON, P.J., concurs in the result.
[1] Thus, we are not overruling that portion of the Wood opinion that allowed the husband to set off the amount of periodic alimony overpaid against the periodic alimony arrearage owed to the wife.