PER CURIAM.
Romaine Samples Scott III (“the former husband”) appeals from a judgment of the Jefferson Circuit Court[1] (“the trial court”), which granted the former husband’s petition to modify the parties’ divorce judgment, in part, and found the former husband to be in contempt for willfully refusing to pay periodic alimony to Catherine Grace Scott (“the former wife”) as ordered in the final divorce judgment of the parties.

Facts and Procedural History

The parties were divorced by the trial court on August 30, 2002. Pursuant to an agreement reached by the parties, which was incorporated into their divorce judgment, the former husband was obligated to pay periodic alimony to the former wife in the amount of $1,400 each month until the former husband’s death, the former wife’s death, the former wife’s remarriage, “the [former] wife’s commission of those acts contemplated in [§ ]30-2-55, [Ala.Code 1975,] or as otherwise provided by law.”[2] On April 30, 2008, the former husband filed a petition to modify the parties’ divorce judgment insofar as it awarded the former wife $1,400 a month in periodic alimony. The former husband alleged that there had been a material change in circumstances since the entry of the divorce judgment, asserting that the former wife’s income had “increased substantially” while the former husband’s income had “significantly decreased.” The former husband further alleged that his obligation to pay periodic alimony to the former wife was due to be terminated because the former wife had “committed those acts contemplated in [§ ]30 — 2—55, [Ala.Code 1975].”
On May 15, 2008, the former wife filed an answer to the former husband’s petition *81 to modify, a counterpetition to modify the parties’ divorce judgment, and a petition for a rule nisi. The former wife denied the material allegations set forth in the former husband’s petition and averred that her award of periodic alimony was due to be increased. She further requested, among other things not pertinent to this appeal, that the trial court hold the former husband in civil and criminal contempt for failure to pay periodic alimony pursuant to the divorce judgment.
On February 2, 2009, the former husband filed a motion for a summary judgment, arguing that there was “no genuine issue of material fact as to the cohabitation of the [former wife].” In support of his motion for a summary judgment, the former husband attached the former wife’s deposition testimony and the affidavit of the parties’ daughter.[3] The record indicates that the trial court did not rule on the former husband’s summary-judgment motion.
The trial court heard the following pertinent evidence at an ore tenus hearing held on February 3, 2009. The former wife testified that she met a male neighbor (“the alleged paramour”) in October 2003 and that they drank wine together almost every night. She further stated that they had had sexual relations and that she had spent the night at the alleged paramour’s home. However, she also testified that she was not “emotionally or sexually” involved with anyone. The former wife’s testimony indicated that she and the alleged paramour had traveled out-of-state together several times a year, that they had keys to one another’s homes, that the alleged paramour knew the security code to the garage door at the former wife’s home, and that the former wife and the alleged paramour had spent holidays together. She further testified that she and the alleged paramour shared meals together two or three nights a week.
The former wife also stated that the alleged paramour had not paid any of her bills or debts except on three isolated occasions; on those occasions, the former wife testified, she had reimbursed the alleged paramour on the same day. She stated that she had never paid any of the alleged paramour’s bills. She testified that the alleged paramour had done her laundry on three occasions but that she kept no clothing or personal items at the alleged paramour’s home and that the alleged paramour kept no clothing or personal items at her home. The former wife saw the alleged paramour approximately six days a week at her home, but, she stated, she had not spent the night at the alleged paramour’s home since the spring of 2008. The former wife admitted that she and the alleged paramour had discussed § 30-2-55 and that she and the alleged paramour had changed some of their “habits and patterns” after she was served with the former husband’s petition to modify. The former wife testified that the alleged paramour had never spent the night at her home.
The former husband stopped making periodic-alimony payments to the former wife in April 2008. The former wife stated that she used an equity line of credit to meet her monthly expenses after the former husband stopped making periodic-alimony payments. The former wife drew approximately $6,000 from the equity line of credit sometime between August 15, 2008, and September 16, 2008. The for *82 mer wife testified that she had used that money to pay her college-education expenses. The former wife admitted that the former husband was not obligated to pay her college-education expenses in the divorce judgment. The former wife also indicated that she drew approximately $6,000 from the equity line of credit between October 22, 2008, and November 18, 2008. The former wife testified that she used approximately $4,800 of that money to pay her credit-card bill, which, she testified, had increased since the former husband had stopped making periodic-alimony payments to her in April 2008.[4]
The former husband gave testimony setting forth his reasons for filing the petition to modify the former wife’s award of periodic alimony. He testified that he had received information from the parties’ daughter regarding a relationship between the former wife and the alleged paramour.[5] The former husband stated that he had met the alleged paramour at two social events when the alleged paramour was apparently escorting the former wife. Further, the former husband had learned that the former wife had gotten a job as a legal secretary and that she was earning more money than she did at the time the parties divorced. He further testified that he had begun having health problems and that he was concerned about his earning ability. The former husband stated that after he filed the petition to modify he paid the former wife’s periodic-alimony payment into an escrow account held by his attorney’s law firm. The former husband testified that he altered his method of paying the periodic alimony because he believed the new method was consistent with caselaw addressing the issue.[6]
The former husband testified that he had been hospitalized approximately five times in the two years preceding the final hearing in this matter. He stated that his disposable income had decreased because of his medical bills. The former husband had worked at the same law firm for approximately three years preceding the final hearing, and he testified that his income had decreased in those three years. In March 2008, the former husband’s residence went into foreclosure, and at the time of the final hearing the former husband was renting a home for $900 a month.
*83 It was undisputed that the former wife’s yearly income had increased by approximately $28,000 since the parties’ divorce. Evidence also indicated that the former wife’s monthly health-insurance cost had decreased from $203 a month to approximately $90 a month. The former wife also testified that, at the time of the divorce, she had had no retirement savings but that, at the time of the final hearing, she had approximately $15,000 saved in retirement accounts.
The former husband’s income-tax documents revealed that his yearly income at the time of the parties’ divorce was approximately $136,000. The former husband testified that his earned income in 2008 and 2009 was $10,000 a month, or approximately $120,000 a year. However, the former husband’s 2008 tax documents indicated that his yearly income was approximately $175,000. The former husband explained that any amount he received over $120,000 was a “distribution of profits.” The former husband admitted that he had received a $30,000 bonus from his employer in January 2009, but he stated that he did not receive a bonus every month.
The trial court entered a final judgment on February 4, 2009, containing the following findings and conclusions: (1) that the former wife’s income had increased since the entry of the parties’ divorce judgment and that, therefore, the former husband’s periodic-alimony obligation to the former wife should be reduced to $950 a month; (2) that the former husband had unilaterally suspended all alimony payments to the former wife in April 2008 and had held those alimony payments in escrow; (3) that there was “no credible evidence tending to indicate that” the former wife was eohabitating with a member of the opposite sex so as to trigger the application of § 30-2-55; (4) that the former husband had brought the petition to modify in bad faith; (5) that the periodic-alimony payments made by the former husband into an escrow account were not made in good faith and caused a financial hardship to the former wife; (6) that the former husband owed the former wife $14,000, plus interest, as a periodic-alimony arrearage; (7) that the former husband was in contempt for willfully and intentionally refusing to pay periodic alimony to the former wife, as ordered in the parties’ divorce judgment, from April 2008 through January 2009; (8) that the former husband should be sentenced to 50 days in jail but that that sentence would be suspended upon the payment of the periodic-alimony arrear-age, plus interest, due the former wife; and (9) that, if the former husband became more than 10 days in arrears in his periodic-alimony payments at any point in the 2 years following the entry of the final order, upon the filing of a verified motion by the former wife, the trial court would conduct a “contempt hearing to determine if the conduct of the [former husband] shall merit the imposition of any remaining balance of said jail sentence.”

Discussion

On appeal, the former husband first argues that the trial court erred in failing to terminate his periodic-alimony obligation to the former wife because, he asserts, there was credible evidence indicating that the former wife was cohabitat-ing with a member of the opposite sex. This court has held that
“ ‘[i]t is a question of fact for the trial court to determine as to whether a former spouse is living openly or cohabiting with a member of the opposite sex in order to authorize a termination of periodic alimony under § 30-2-55, Code of Alabama 1975. The burden of proof as to that matter is upon the party seeking relief under *84 the code section. The trial court’s decision upon that issue will not be revised upon an appeal unless, after considering all the evidence and the reasonable inferences therefrom, the trial court was palpably wrong.’
“Knight v. Knight, 500 So.2d 1113, 1115 (Ala.Civ.App.1986). ‘[Cjohabitation requires some permanency of relationship coupled with more than occasional sexual activity between the cohabitants.’ Hicks v. Hicks, 405 So.2d 31, 33 (Ala.Civ.App.1981); see also Vaughn v. Vaughn, 507 So.2d 960 (Ala.Civ.App. 1987).... To evaluate the permanency of a relationship to determine whether a former spouse is cohabiting with a member of the opposite sex, this court has considered whether the former spouse is sharing a dwelling with a member of the opposite sex; whether the former spouse has ceased to date other members of the opposite sex; payment of the former spouse’s creditors by a member of the opposite sex; and the purchase of clothes for the former spouse by a member of the opposite sex. Knight v. Knight, 500 So.2d at 1115.”
McNatt v. McNatt, 908 So.2d 944, 945-46 (Ala.Civ.App.2005).
Because the ore tenus rule applies to the trial court’s findings, the trial court’s judgment as to whether the former wife was cohabitating with a member of the opposite sex within the meaning of § 30-2-55 will be affirmed by this court “ ‘if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.’ ” Id. at 945 (quoting Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala.1992)). After a careful review of the evidence, we conclude that the trial court had evidence before it to support its finding that the former wife was not cohabitating with a member of the opposite sex.[7] The former wife’s testimony revealed that she did not consider herself emotionally or sexually involved with anyone, that she and the alleged paramour maintained separate residences, and that she and the alleged paramour did not make any financial contributions to one another’s creditors. See Snipes v. Snipes, 651 So.2d 19, 20 (Ala.Civ.App.1994) (“Factors suggesting permanency of relationship include occupation of the same dwelling and the sharing of household expenses.”). We conclude that the trial court was not plainly or palpably wrong in implicitly finding that the former husband had not met his burden, pursuant to § 30-2-55, to establish some permanency of the relationship between the former wife and the alleged paramour or more than occasional sexual activity between the former wife and the alleged paramour. See Ex parte Ward, 782 So.2d 1285, 1287 (Ala.2000); McNatt v. McNatt, 908 So.2d at 946; and Sanders v. Burgard, 715 So.2d 808, 811 (Ala.Civ.App.1998). We therefore affirm that part of the trial court’s February 4, 2009, judgment finding that the former wife was not cohabitating with a member of the opposite sex within the meaning of § 30-2-55, and we also affirm that part of the trial court’s February 4, 2009, judgment requiring the former hus *85 band to pay the former wife $14,000, plus interest, as a periodic-alimony arrearage.
The former husband next argues that the trial court erred in holding that he was in contempt for failing to pay periodic alimony to the former wife from April 2008 through January 2009. He argues that he should not have been held in contempt because he, in good faith, relied on this court’s decision in Sanders v. Burgard, supra, and paid the former wife’s periodic alimony into an escrow account held by his attorney pending a determination by the trial court as to whether the former wife was cohabitating with a member of the opposite sex. In Sanders, this court stated:
“[W]e have previously interpreted § 30-2-55 to mean that the obligation to pay periodic alimony ceases on the date the spouse receiving alimony began cohabiting. [Wood v. Wood,] 682 So.2d [1386,] 1386 [ (Ala.Civ.App.1996) ]. Yet, the legislature specifically provided that periodic alimony paid to a cohabiting or remarried spouse does not have to be repaid. However, those who pay periodic alimony are not left without options. For instance, in this case, Sanders paid periodic alimony into an escrow account pending the trial court’s final ruling. Because the court determined that Bur-gard was cohabiting, the periodic alimony paid into the account was returned to Sanders. In addition, this court has in previous opinions refused to require the paying spouse to pay periodic alimony arrearages that accrued during the other spouse’s remarriage or cohabitation. See Tillis v. Tillis, 405 So.2d 938 (Ala.Civ.App.1981) (where husband stopped paying alimony on date of wife’s remarriage, he did not have to repay alimony due between date of remarriage and date of his filing petition, because obligation ceased on date of remarriage); see also Musgrove v. Hawkins, 513 So.2d 4 (Ala.Civ.App.1987) (holding that trial court erred in ordering husband to pay wife’s medical bills incurred between the date her cohabitation began and the date the petition to terminate was filed, because his obligation to pay ceased on the date the cohabitation began). Although the paying spouse will not be required to pay periodic alimony arrearages if cohabitation is proven, we do not believe that it is wise for a paying spouse to simply stop paying periodic alimony based on his or her suspicion of the other spouse’s cohabitation. Such a course of action could lead to a holding of contempt, not to mention that the paying spouse could owe a considerable amount of arrearage if cohabitation was not proven. Indeed, making payments into an escrow account appears to be the better course for a person in this situation.”
715 So.2d at 810-11 (emphasis added).
“A determination regarding contempt of court is committed to the sound discretion of the trial court, and we will affirm unless the trial court abused its discretion or ‘unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong....’” Brown v. Brown, 960 So.2d 712, 716 (Ala.Civ.App.2006) (quoting Stack v. Stack, 646 So.2d 51, 56 (Ala.Civ.App.1994)).
On appeal, the former husband argues that the evidence presented at the final hearing did not support the trial court’s finding of contempt. Conversely, the former wife argues that the trial court’s findings that the former husband filed the petition to modify in bad faith and that he placed the periodic-alimony payments in escrow in bad faith support the trial court’s finding that the former husband “willfully and intentionally failed and refused to ... pay alimony as ordered.”
*86 However, after a review of the record, we cannot find any evidence to support the trial court’s finding that the former husband filed the petition to modify in bad faith. At the final hearing, the former husband gave several reasons for filing the petition to modify, including his health condition, his knowledge that the former wife was earning substantially more income than she had been at the time of the parties’ divorce, and the fact that former husband, based on information from the parties’ daughter and his personal experience, suspected that the former wife had an ongoing relationship with the alleged paramour. After a review of the record, we cannot discern any evidence that the trial court could have relied on to support its finding that the former husband filed the petition to modify in bad faith.
Furthermore, this court can find no evidence to support the trial court’s finding that the former husband placed the periodic-alimony payments in escrow in bad faith. The former husband testified that he altered his method of paying the periodic alimony because he believed the new method was consistent with caselaw addressing the issue.[8] As set forth above, this court in Sanders clearly endorsed the payment of periodic alimony into an escrow account upon the filing of a petition to modify an award of periodic alimony pursuant to § 30-2-55 in order to avoid the possibility of a contempt finding.
We conclude that the trial court exceeded its discretion in holding the former husband in contempt because there was no evidence to support the trial court’s finding that the former husband “willfully and intentionally failed and refused to ... pay [periodic] alimony as ordered.” Instead, the evidence at the final hearing indicated that the former husband, following the clear direction given by this court in Sanders, began making periodic-alimony payments into an escrow account after filing a petition to modify the former wife’s award of periodic alimony based, in part, on the former husband’s good-faith belief that the former wife was committing the acts contemplated in § 30-2-55. Therefore, that part of the trial court’s February 4, 2009, judgment holding the former husband in contempt is reversed. On remand, the trial court is ordered to vacate that portion of its February 4, 2009, judgment holding the former husband in contempt.
However, we cannot endorse the former husband’s unilateral decision to place his monthly periodic-alimony payments into escrow. Such action has the potential to cause a financial hardship on a spouse receiving alimony. When a payor spouse files a petition to modify an award of periodic alimony based on § 30-2-55, we believe the better procedure is for the payor spouse to file a motion, in conjunction with or subsequent to filing the petition to modify, requesting that the trial court conduct *87 an expedited pendente lite hearing to determine whether the payor spouse may place periodic-alimony payments into escrow.
Finally, the former husband argues that the trial court exceeded its discretion by failing to terminate his periodic-alimony obligation to the former wife based on the change in both parties’ financial circumstances.
“ ‘It is well established in Alabama that the modification of an alimony provision based upon changed circumstances is a matter that rests within the circuit court’s sound discretion. Furthermore, the ore tenus standard is applied to the ruling of the circuit court; thus, a presumption of correctness attaches to the ruling and the ruling will not be reversed unless it is not supported by the evidence and is clearly an abuse of the court’s discretion....’”
Ex parte Millard, 683 So.2d 1002, 1003 (Ala.1996) (quoting Ex parte Smith, 673 So.2d 420, 421 (Ala.1995)).
“ ‘Thus, when [the Supreme] Court or the Court of Civil Appeals reviews a circuit court’s order, it is not to substitute its judgment of the facts for that of the circuit court. Rea v. Rea, 599 So.2d 1206 (Ala.Civ.App.1992). Instead, [the appellate court’s] task is simply to determine if there was sufficient evidence before the circuit court to support its decision against a charge of arbitrariness and abuse of discretion. Peterman v. Peterman, 510 So.2d 822 (Ala.Civ.App.1987).’ ”
Id. (quoting Ex parte Smith, 673 So.2d at 422).
We conclude that evidence presented to the trial court supports the trial court’s judgment modifying the former wife’s award of periodic alimony. The former husband presented evidence indicating that the former wife was earning approximately $23,000 a year more than she had been earning at the time of the parties’ divorce. However, the former wife also produced evidence indicating that the former husband earned approximately $39,000 more in 2008 than he had at the time of the parties’ divorce. The trial court could have concluded that that testimony, along with the testimony of the former husband regarding his medical condition, supported a downward modification of the former husband’s periodic-alimony obligation to the former wife.
The former husband argues that the former wife is “financially self-supporting and does not need alimony to sustain a lifestyle that is at least equal or better than that which existed during the marriage.” The trial court heard ore tenus evidence regarding the former wife’s income, expenses, and lifestyle, as well as evidence indicating that the former wife had been required to draw on an equity line of credit in order to pay her credit-card bill after the former husband stopped making periodic-alimony payments to her in April 2008. The trial court specifically found that the former wife had suffered a financial hardship when the former husband stopped making periodic-alimony payments directly to the former wife in April 2008. To reverse the trial court’s judgment because we believe that the former wife was financially self-supporting or that she maintained a lifestyle status equal to or better than the status the parties had enjoyed during marriage would be to substitute our judgment for the trial court’s, and that we will not do. See Ex parte Foley, 864 So.2d 1094, 1099 (Ala.2003) (holding that “an appellate court may not substitute its judgment for that of the trial court” and that “[t]o do so would be to reweigh the evidence, which Alabama law does not allow”). Therefore, we affirm the *88 trial court’s judgment insofar as it modified the former husband’s periodic-alimony obligation to the former wife.
The former wife’s request for attorney’s fees is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
MOORE, J., concurs in part and dissents in part as to the rationale and concurs in the result, with writing.
THOMAS, J., concurs in part and dissents in part, with writing.

. All the judges serving in the domestic-relations division of the Jefferson Circuit Court recused themselves from this case. The case was therefore assigned to a judge from the Marshall District Court.

. Section 30-2-55 provides, in pertinent part: "Any decree of divorce providing for periodic payments of alimony shall be modified by the court to provide for the termination of such alimony upon petition of a parly to the decree and proof that the spouse receiving such alimony has remarried or that such spouse is living openly or cohabiting with a member of the opposite sex.... [N]o payments of alimony already received shall have to be reimbursed.”

. According to her sworn affidavit, the parties’ daughter lived with the former wife from August 2003 through March 2006, and again from March 2007 through August 2007, and she had personal knowledge of certain aspects of a relationship between the former wife and the former wife’s neighbor.

. A review of a statement of the former wife’s credit-card use reveals that the former wife paid $4,506.25 toward her accumulated credit-card debt in October 2008, which was the total balance of her credit card. In April 2008, the balance on the former wife’s credit card was $589.60.

. The former husband attached the affidavit of the parties’ daughter to the motion for a summary judgment he filed the day before the final hearing in this matter. However, the parties' daughter did not testily at the final hearing. The trial court heard the former husband’s testimony regarding the statements made by the parties' daughter in her affidavit, not for the truth of the matter asserted, but only to establish the former husband’s motive for filing the petition to modify. See Queen v. Belcher, 888 So.2d 472, 477 (Ala.2003) (noting that statements in affidavits are generally considered to be inadmissible hearsay that cannot be offered as substantive evidence at trial).
The former husband's brief on appeal contains a statement of facts that includes certain facts found only in the former wife’s deposition testimony and a factual summary of the statements in the parties’ daughter’s affidavit. The former wife asks this court to strike those portions of the former husband’s brief that incorporate facts not contained in the trial record, i.e., facts derived from the former wife’s deposition testimony and the parties’ daughter's affidavit. We deny the motion to strike; however, this court has considered only the evidence properly offered to and received by the trial court. See Thompson v. Patton, 6 So.3d 1129, 1138 (Ala.2008).

.The former husband is a practicing attorney in Jefferson County.

. The former husband asks this court to “consider whether to allow recipients of alimony to enter into relationships that fall well within the spirit of cohabitation but allow them to retain alimony because they, through last minute manipulation, seek to make the relationship appear to be less permanent than it is." We believe that it is well within the sound discretion of the trial court to consider such a scenario in making its judgment. Although this court is disturbed by the former wife's admission that she and the alleged paramour adjusted some of their behavior after she received the former husband's petition to modify the parties' divorce judgment, we must assume that the trial court heard that testimony and fully considered it when making its final determination.

. The former wife argues that the former husband did not produce any evidence at trial to substantiate his claim that he began paying alimony into escrow after filing the petition to modify, especially in light of the fact that the former husband filed motions pro se for two months following the filing of his petition to modify and escrow account was purportedly held by his attorney’s law firm. However, the former wife never challenged the former husband's failure to produce evidence to show when he first began making the periodic-alimony payments into escrow. In fact, there is very little testimony in the record regarding the escrow of the periodic-alimony payments from April 2008 through January 2009. The former husband testified that the $1,400 a month that was due the former wife was paid into an escrow account held by his attorney's law firm. Further, in its final order, the trial court found that the former husband "ha[d] held the [periodic] alimony payments in escrow.”