THOMAS, Judge.
James Michael Henderson (“Henderson”) and Julie Jones Mogren, formerly Julie Jones Henderson (hereinafter referred to as “the former wife” or “Mogren”), were married in 1992 and divorced on October 25, 2006, by a judgment (“the divorce judgment”) entered by the Montgomery Circuit Court. The divorce judgment incorporated the parties’ settlement agreement. Regarding Henderson’s alimony and life-insurance' obligations, which are the subjects of the present appeal, the divorce judgment provided:
“7. ALIMONY — [Henderson] shall pay to [the former wife] in satisfaction of his obligations of support and maintenance, the periodic monthly sum of Twelve Hundred Dollars ($1,200.00), the first payment of which shall be due on the 1st day of October, 2006, and subsequent installments due on the first day of each month thereafter for a term of Seventy-two (72) months.

“The provisions of this paragraph in particular and of this Settlement Agreement in general are part of an integrated bargain between the parties and cannot be modified by the Court without the consent of both parties.

“8. LIFE INSURANCE— [Henderson] shall purchase and maintain a term life insurance policy on his life in the face amount of $350,000,00. [The former wife] shall be the sole and irrevocable beneficiary and owner of said policy. The parties’ children shall be named as the successor beneficiaries on the policy. [Henderson] shall pay to [the former wife] the sum of the monthly premium (amount yet to be determined) on the 1st day of each and every month as payment of the premium on said policy. (If [the former wife] precedes [Henderson] in death, [Henderson] shall make the monthly premium payment to the parties’ daughter, Jessica, who in turn will pay the premium when due to the insurance company and the ownership of the policy shall pass to Jessica.)
“In the event the life insurance policy shall not be in force on the death of [Henderson], there shall be a lien on the estate of [Henderson] in favor of [the former wife], or in the event of her prior death, in favor of the children in the face amount required herein.”
(Emphasis added.)
On January 22, 2010, the former wife filed a contempt petition alleging that Henderson had accrued an alimony arrear-age of $24,690 and that he had failed to acquire a term life-insurance policy naming her as the beneficiary or the parties’ then adult children as the successor beneficiaries. The former wife also alleged that Henderson had failed to pay the parties’ income taxes for 2006, the last year in which they were married, which failure, she alleged, resulted in her being liable for “probably not less than $5,000” in unpaid income taxes. She also requested an award of attorney fees. On February 28, 2010, Henderson filed for personal bankruptcy, under Chapter. 18 of the federal Bankruptcy Code; as a result, the contempt action was placed on the circuit court’s administrative docket, but it was restored to the circuit court’s active docket on May 13, 2010. On September 1, 2010, the parties filed a modification agreement for the court’s approval, in which they agreed to modify certain provisions of the divorce judgment.
In the modification agreement, the parties agreed that Henderson would pay the *632 former wife $900 per month for 78 months ($900 x 78 = $70,200) and $652.08 on the first day of the 79th month ($70,200 + $652.08 = $70,852.08). Furthermore, Henderson promised to purchase a term life-insurance policy within 30 days in the amount of $150,000 naming the former wife as the beneficiary and their adult children as successor beneficiaries. Neither the alleged income-tax obligation nor the former wife’s request for attorney fees were specifically addressed in the modification agreement.
According to the former wife, the modification agreement reflected the parties’ attempt to “refinance” Henderson’s alimony obligation, and, according to Henderson, his intent was to “fulfill the commitment that [he] 'had made to [the former wife] previously [ — ] trying to structure in such a way where [he] could live up to that commitment”; however, Henderson stated, at all times he believed that his alimony obligation would terminate upon the former wife’s remarriage. The former wife asserts that, in determining the amount to be paid by Henderson pursuant to the modification agreement ($70,852.08), the parties added Henderson’s alimony arrearage of $38,920,[1] the former wife’s attorney fees in the amount of $2,500, the former wife’s payment of income taxes that Henderson had agreed to pay but had failed to pay in the amount of $4,500, and the remaining alimony payments in the monthly amount of $1,200 that had yet to accrue under the settlement agreement incorporated into the divorce judgment representing (approximately) 24 months, or $28,800. The total of those sums equals $69,720, which, when divided by 78, equals $893.85. The circuit court entered a judgment incorporating the parties’ modification agreement (“the contempt judgment”) on August 31, 2010. In March 2011, the former wife remarried and changed her surname to “Mogren.” Upon the former wife’s remarriage, Henderson stopped paying alimony to Mogren but began paying the monthly amount of $900 into his attorney’s trust account. Henderson did not purchase a term life-insurance policy.
On December 13, 2011, Henderson filed a petition for a modification of the contempt judgment. He requested the termination of his alimony obligation because, he said, the divorce judgment and the contempt judgment had awarded periodic alimony and his obligation to pay alimony had terminated upon Mogren’s remarriage. Mogren filed an answer and an amended answer to Henderson’s petition in which she admitted that she had remarried, but she argued that the judgments had awarded her alimony in gross and that Henderson’s obligation to pay alimony in gross had not terminated upon her remarriage. Mogren filed a “Counter Petition for Contempt Citation” in which she asserted that Henderson had failed to pay alimony payments or to provide proof that he had purchased a term life-insurance policy as ordered in the contempt judgment. It is undisputed that in January 2012 Henderson purchased a term life-insurance policy in the amount of $150,000 naming Mogren as the sole beneficiary but failing to name the parties’ children as successor beneficiaries.
A hearing was held on August 29, 2012, and on September 5, 2012. On September 12, 2012, the circuit court entered its judgment (“the modification judgment”) determining that paragraph seven of the divorce judgment, which was modified by the contempt judgment, had awarded alimony in gross. It ordered Henderson to immedi *633 ately pay the past-due amounts of alimony, to resume alimony payments, and to pay Mogren’s attorney fees in the amount of $2,561.01. It held Henderson in contempt for failing to pay alimony to Mogren and for failing to follow its orders regarding the term life-insurance policy. The circuit court retained jurisdiction to determine the amount of interest due on the past-due alimony installments.
On October 10, 2012, Henderson filed a motion to alter, amend, or vacate the modification judgment, challenging the sufficiency of the evidence. According to Henderson, the evidence indicated that the alimony award in paragraph seven of the divorce judgment, which was modified by the contempt judgment, was a periodic-alimony award because, he asserted, there was “absolutely no marital estate” from which the circuit court could have awarded alimony in gross in the divorce judgment and, he asserted, the circuit court had merely modified the alimony award in the contempt judgment. A hearing on Henderson’s postjudgment motion was held, and the circuit court entered an order denying Henderson’s motion on December 14, 2012. Henderson filed an appeal on January 25, 2013, seeking this court’s review as to whether the circuit court had erred by determining that the award of alimony in paragraph seven of the divorce judgment, which was modified by the contempt judgment, was an award of alimony in gross, by denying his request to terminate his alimony obligation, by holding him in contempt, and by ordering him to pay Mogren’s attorney fees.[2]

I. Alimony

The parties’ dispute regarding alimony centers on whether Henderson’s alimony obligation terminated upon Mogren’s remarriage. We conclude that the circuit court’s determination that the alimony award was an award of alimony in gross is error; however, the circuit court did not err by denying Henderson’s request to terminate his alimony obligation.
Testimony and documentary evidence admitted at the modification hearing indicate that the parties negotiated the terms pertaining to alimony contained in the divorce judgment in an e-mail exchange in 2006. Mogren requested graduated alimony payments — $1,200 per month for 6 months, $1,400 per month until the end of the “first year,” and $1,800 per month for 9 years. Henderson counteroffered, proposing to pay “a flat $1,200 per month for 60 months subject to a review of each of our earnings, and your remarriage, cohabitation, etc.” Mogren counteroffered, requesting “$1,200 per month, for 72 months, no conditions, no reviews.” Henderson accepted Mogren’s counteroffer, and their agreement was memorialized in paragraph seven of the settlement agreement, which, as already mentioned, included the following sentence: “The provisions of this paragraph in particular and of this Settlement Agreement in general are part of an integrated bargain between the parties and cannot be modified by the Court without the consent of both parties.” (Emphasis added.) Thereafter the parties consented to a modification of the settlement agreement in the modification agreement, which *634 was incorporated into the contempt judgment.
Henderson argues that he agreed to pay periodic alimony; specifically, he asserts that the parties’ agreement, which was memorialized in paragraph seven of the settlement agreement incorporated into the divorce judgment, was a modifiable agreement for Mogren’s support and maintenance that would terminate upon her remarriage and that the “plain language of the agreement” indicates that the obligation is periodic alimony. Mogren argues that Henderson agreed to pay alimony in gross, which is a nonmodifiable property settlement, representing Henderson’s obligation to pay a fixed sum for a fixed number of months, which would not terminate upon her remarriage.[3] After hearing ore tenus testimony at the modification hearing, the circuit court agreed with Mo-gren that paragraph seven had provided an award of alimony in gross in the contempt judgment even if it had not in the divorce judgment.[4] The circuit court’s findings in the modification judgment include the following:
“[The contempt judgment] provides for alimony in gross. If there was any question concerning the [divorce judgment], certainly the agreement in the [contempt judgment] was based upon delinquent alimony already due, interest on said alimony, [Mogren’s] attorneys fees, and some amount for taxes. This finding is further supported by the fact that the agreement was for an odd number of months with the final payment being $652.08 instead of the $900 per month for the first 78 months [ — a] clear indication that the payments were for reimbursement of a determined/definite sum.”
Neither the parties nor the circuit court is correct. The parties agreed to an award of a fixed amount, and that award included elements of both periodic alimony and alimony in gross. Because the settlement agreement and the modification agreement resolved the issues pertaining to both property rights and rights of support and maintenance, the award is neither an award of periodic alimony nor an award of alimony in gross. Thus, we must determine the nature of the agreement the par *635 ties entered into and whether the agreement is modifiable upon the event of the former wife’s remarriage.[5] This court has stated:
“Agreements by which both property rights and rights of support and maintenance are settled consist of two categories. In the ‘severable combination’, although both types of rights are fixed, the provisions as to each are severable and distinct so that the amount of alimony initially agreed upon by the parties may thereafter be modified by the trial court.
“In the ‘integrated bargain’ category of agreement, the amount of alimony to be paid for support and maintenance has been established by the parties by taking into account the property settlement features of the agreement. In other words, ‘ “integrated bargain” agreements [provide] for both support and division of property, but with the entire provision for one spouse being in consideration for the entire provision for the other, so that the support and property terms are inseparable.’ 61 A.L.R.3d 520, 529. Alimony payments thus established may not thereafter be modified by the court without the consent of both parties.”
DuValle v. DuValle, 348 So.2d 1067, 1069 (Ala.Civ.App.1977).
Although the parties agreed as to the amount Henderson was to pay to Mogren for her support and maintenance, the settlement agreement and the modification agreement each expressly provides that it is an integrated bargain; therefore, Henderson’s alimony obligation cannot be modified without the consent of the parties.[6] Unless Mogren consents to a fur *636 ther modification, Henderson remains obligated to pay alimony to Mogren despite Mogren’s remarriage. Therefore, although the circuit court erred by concluding that the award at issue was an award of alimony in gross, it did not err by refusing to terminate Henderson’s obligation to pay that award upon Mogren’s remarriage.[7]
“ ‘[T]his Court will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court. Ex parte Ryals, 773 So.2d 1011 (Ala.2000), citing Ex parte Wiginton, 743 So.2d 1071 (Ala.1999), and Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala.1988).’ ”
Ex parte Moulton, 116 So.3d 1119, 1132 (Ala.2013) (quoting Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003)).

II. Contempt

Henderson complains that the circuit court erred by holding him in contempt for failing to pay alimony and for failing to purchase a term life-insurance policy. When evidence is presented to a trial court in an ore tenus proceeding, the trial court’s finding regarding contempt is presumed correct. Varner v. Varner, 662 So.2d 273, 277 (Ala.Civ.App.1994) (citing Pierce v. Helka, 634 So.2d 1031 (Ala.Civ.App.1994)).[8]

A. Contempt for Failure to Pay Alimony

The circuit court found Henderson in contempt for failing to pay alimony. According to Henderson, the circuit court erred because he had complied with the circuit court’s alimony orders, although he admits that he failed to pay alimony directly to Mogren as directed by the circuit court. He contends that once Mogren remarried he “continued to make every single payment” into his attorney’s trust account in reliance on this court’s holding in Sanders v. Burgard, 715 So.2d 808, 811 (Ala.Civ.App.1998).
In Sanders, we indicated that a payor spouse’s paying alimony into an escrow account until a trial court could determine *637 that he or she was no longer obligated to pay alimony was an appropriate option for a payor spouse who had a good-faith belief that the recipient spouse had committed any of the acts justifying termination of the payor spouse’s obligation under § 30-2-55. Sanders, 715 So.2d at 811.
“[W]e have previously interpreted § 30-2-55 to mean that the obligation to pay periodic alimony ceases on the date the spouse receiving alimony began cohabiting. [Wood v. Wood,] 682 So.2d [1386,] 1386 [ (Ala.Civ.App.1996) ]. Yet, the legislature specifically provided that periodic alimony paid to a cohabiting or remarried spouse does not have to be repaid. However, those who pay periodic alimony are not left without options. For instance, in this case, Sanders paid periodic alimony into an escrow account pending the trial court’s final ruling. Because the court determined that Bur-gard was cohabiting, the periodic alimony paid into the account was returned to Sanders. In addition, this court has in previous opinions refused to require the paying spouse to pay periodic alimony arrearages that accrued during the other spouse’s remarriage or cohabitation. See Tillis v. Tillis, 405 So.2d 938 (Ala.Civ.App.1981) (where husband stopped paying alimony on date of wife’s remarriage, he did not have to repay alimony due between date of remarriage and date of his filing petition, because obligation ceased on date of remarriage); see also Musgrove v. Hawkins, 513 So.2d 4 (Ala.Civ.App.1987) (holding that trial court erred in ordering husband to pay wife’s medical bills incurred between the date her cohabitation began and the date the petition to terminate was filed, because his obligation to pay ceased on the date the cohabitation began). Although the paying spouse will not be required to pay periodic alimony arrearages if cohabitation is proven, we do not believe that it is wise for a paying spouse to simply stop paying periodic alimony based on his or her suspicion of the other spouse’s cohabitation. Such a course of action could lead to a holding of contempt, not to mention that the paying spouse could owe a considerable amount of arrearage if cohabitation was not proven. Indeed, making payments into an escrow account appears to be the better course for a person in this situation.”
Id. at 810-11 (emphasis added).
In Scott v. Scott, 38 So.3d 79, 86 (Ala.Civ.App.2009), this court considered a situation similar to the situation in the case at hand and came to the following conclusion:
“We conclude that the trial court exceeded its discretion in holding the former husband in contempt because there was no evidence to support the trial court’s finding that the former husband ‘willfully and intentionally failed and refused to ... pay [periodic] alimony as ordered.’ Instead, the evidence at the final hearing indicated that the former husband, following the clear direction given by this court in Sanders, began making periodic-alimony payments into an escrow account after filing a petition to modify the former wife’s award of periodic alimony based, in part, on the former husband’s good-faith belief that the former wife was committing the acts contemplated in § 30-2-55. Therefore, that part of the trial court’s February 4, 2009, judgment holding the former husband in contempt is reversed. On remand, the trial court is ordered to vacate that portion of its February 4, 2009, judgment holding the former husband in contempt.”
However, in Scott, we did not “endorse” the “clear direction” we provided in Sanders. Id. Instead, we outlined a “better procedure”: “for the payor spouse to file a *638 motion, in conjunction with or subsequent to filing the petition to modify, requesting that the trial court conduct an expedited pendente lite hearing to determine whether the payor spouse may place periodic-alimony payments into escrow.” Id. at 86-87. Because we admit that our language in Sanders and Scott is both vague and perhaps conflicting, we excuse Henderson’s attempt to follow our “clear direction” in Sanders in lieu of the “better procedure” outlined in Scott.
Today, however, we expressly overrule those portions of Sanders and Scott that had recommended placing disputed periodic-alimony payments into an escrow account. As of the date of this opinion, a payor spouse who unilaterally elects to place his or her monthly alimony payments into an escrow account in violation of a valid court order requiring such payments to be made to the recipient spouse will subject himself or herself to a finding of contempt. To be clear, nothing in today’s opinion should be interpreted as limiting of a trial court’s ability to modify its own orders. “A trial court possesses an inherent power over its own judgments that enables it to interpret, implement, or enforce those judgments.” Grayson v. Grayson, 628 So.2d 918, 919 (Ala.Civ.App.1993). It is obviously within the discretion of a trial court to grant a request for an expedited hearing if a payor spouse requests such a hearing under a good-faith belief that a recipient spouse has committed any of the acts contemplated in § 30-2-55. A trial court may certainly modify the payor spouse’s periodic-alimony obligation; however, unless a trial court modifies its existing order, a payor spouse is obligated to comply with the terms of the existing order.

B. Contempt for Failure to Purchase a Term Life-Insurance Policy

Regarding the circuit court’s finding that Henderson failed to comply with the provisions of the divorce judgment and the contempt judgment that required him to purchase a term life-insurance policy, we discern no error. Henderson argues that his failure to comply with those provisions was not willful and should be excused because he was unable to comply. He directs this court to Hurd v. Hurd, 485 So.2d 1194, 1195 (Ala.Civ.App.1986), for the proposition that the inability to comply is a complete defense to a contempt claim. Henderson testified that he had tried to comply, that no private insurance company would cover him, and that he had purchased insurance though open enrollment with his employer in January 2012. He said that Mogren was named as the sole beneficiary of the policy, but he admitted that he had failed to comply with the circuit court’s direction to pay the premiums to Mogren because, he said, the premiums could be paid only by “payroll deduction.” He also admitted that he had failed to comply with the circuit court’s direction to name the parties’ children as successor beneficiaries because he “did not know he was supposed to.”
,The record reveals that, on October 25, 2006, the circuit court ordered Henderson to purchase and maintain a term life-insurance policy, to name Mogren as the sole beneficiary and owner of the policy, to name the parties’ children as the successor beneficiaries on the policy, and to pay Mo-gren each month the sum of the monthly premium. More than five years later and after he had requested the termination of his alimony obligation, Henderson purchased a term life-insurance policy and named Mogren as the beneficiary. However, there is no dispute that Henderson failed to comply with the circuit court’s orders, or to seek a modification of its orders, requiring him to make Mogren the owner of the policy, to pay her the sum of *639 the monthly premiums, or to name the parties’ children as successor beneficiaries. Therefore, the circuit court did not err by finding Henderson in contempt for his willful refusal to comply with its orders regarding the purchase of a term life-insurance policy.

III. Attorney Fees

In a one-sentence argument that does not contain citation to authority, Henderson concedes that the award of attorney fees in domestic-relations cases is committed to the sound discretion of the trial court, but he requests that this court reverse the circuit court’s award of attorney fees “in light of the [circuit] court’s errors in holding him in contempt.” However, we have determined that the circuit court did not err by holding Henderson in contempt for his failure to purchase the term life-insurance policy; thus, we find no abuse of the circuit court’s discretion in awarding Mogren attorney fees. Section 30-2-54, Ala.Code 1975, provides:
“In all actions for divorce or for the recovery of alimony, maintenance, or support in which a judgment of divorce has been issued or is pending and a contempt of court citation has been made by the court against either party, the court may, of its discretion, upon application therefor, award a reasonable sum as fees or compensation of the attorney or attorneys representing both parties.”

TV. Conclusion

The circuit court did not err by refusing to terminate Henderson’s alimony obligation upon Mogren’s remarriage, by finding Henderson in contempt for his willful refusal to comply with its orders regarding the purchase of a term life-insurance policy, or by ordering Henderson to pay Mo-gren’s attorney fees. Those portions of the circuit court’s judgment are therefore affirmed.
That part of the modification judgment that held Henderson in contempt for his alleged failure to pay alimony, however, is reversed because Henderson paid alimony into an escrow account in compliance with this court’s direction in Sanders, supra. Furthermore, as we have explained, the alimony award is not an award of alimony in gross. On remand, the circuit court is instructed to amend the modification judgment by removing those portions of the judgment holding Henderson in contempt for his failure to pay alimony and determining that the alimony award was an award of alimony in gross.
Finally, we expressly overrule Sanders and Scott for the reasons stated in this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
PITTMAN and DONALDSON, JJ., concur.
THOMPSON, P.J., concurs in part and dissents in part, with writing.
MOORE, J., concurs in part, concurs in the result in part, and dissents in part, with writing.

. According to the former wife, Henderson was in arrears in the amount of $33,920 on his alimony obligation at the time the parties ' negotiated the modification agreement.

. Because the circuit court had retained jurisdiction to determine the amount of interest due on the past-due alimony installments, this court, by order, "reinvested [the circuit court] with jurisdiction ... to enter a final judgment determining the amount of interest due on the delinquent amount." In response, the circuit court entered an order in which it explained that, before the scheduled hearing on the matter, the parties had reached an agreement whereby Henderson would pay the total amount of $439.83 in interest. In its order, the circuit court adopted the parties’ agreement, holding that Henderson owed $439.83 in interest on the past-due alimony. Accordingly, the circuit court's judgment is final.

. "Our supreme court has explained the difference between periodic alimony and alimony in gross. Hager v. Hager, 293 Ala. 47, 299 So.2d 743 (1974). Alimony in gross is considered 'compensation for the [recipient spouse’s] inchoate marital rights [and] ... may also represent a division of the fruits of the marriage where liquidation of a couple's jointly owned assets is not practicable.' [Hager], 293 Ala. at 54, 299 So.2d at 749. An alimony-in-gross award 'must satisfy two requirements, (1) the time of payment and the amount must be certain, and (2) the right to alimony must be vested.' Cheek v. Cheek, 500 So.2d 17, 18 (Ala.Civ.App. 1986). It must also be payable out of the present estate of the paying spouse as it exists at the time of the divorce. [Hager], 293 Ala. at 55, 299 So.2d at 750. In other words, alimony in gross is a form of property settlement. [Hager], 293 Ala. at 54, 299 So.2d at 749....
"Periodic alimony, on the other hand, 'is an allowance for the future support of the [recipient spouse] payable from the current earnings of the [paying spouse].’ [Hager], 293 Ala. at 55, 299 So.2d at 750. Its purpose ‘is to support the former dependent spouse and enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until that spouse is self-supporting or maintaining a lifestyle or status similar to the one enjoyed during the marriage.' O’Neal v. O’Neal, 678 So.2d 161, 164 (Ala.Civ.App.1996) (emphasis added).”
TenEyck v. TenEyck, 885 So.2d 146, 151-52 (Ala.Civ.App.2003).

. Judge Patricia Warner entered the divorce judgment and the contempt judgment. Judge Robert Bailey entered the modification judgment.

. We have not overlooked the fact that Henderson's alimony obligation under paragraph seven of the settlement agreement incorporated into the divorce judgment was modified by the contempt judgment. However, that fact is of no importance because the circuit court modified the settlement agreement with the parties' consent, as provided in paragraph seven. DuValle v. DuValle, 348 So.2d 1067, 1069 (Ala.Civ.App.1977); see also Gignilliat v. Gignilliat, 723 So.2d 90, 92 (Ala.Civ.App.1998) ("Alimony obligations determined as part of an ‘integrated bargain' agreement cannot be modified without the consent of both parties.").

. In Oliver v. Oliver, 431 So.2d 1271, 1275 (Ala.Civ.App.1983), this court considered whether the parties' divorce judgment could defeat the requirement in § 30-2-55, Ala. Code 1975, that a payor spouse’s obligation to make alimony payments ceases upon the remarriage of the recipient spouse, because it included an “express agreement" that the periodic-alimony obligation would continue after the remarriage of the recipient spouse. We determined that the parties’ "express agreement" had lost its contractual nature because it had merged into the divorce judgment and, thus, was "subject to the equity power of the court and is no longer of a contractual nature.” Id. We concluded: "Any agreement previously made may be accepted or rejected in full or in part as the court determines just and equitable.” Id. at 1276.
Similarly, in Ex parte Murphy, 886 So.2d 90, 93-94 (Ala.2003), our supreme court reiterated that "any part of the agreement which is merged in the decree is subject to the equity power of the court and is no longer of a contractual nature." In Ex parte Murphy, the parties had agreed, in an integrated bargain, that the payor spouse’s periodic-alimony obligation would be reduced rather than terminated upon the remarriage of the recipient spouse. Our supreme court determined that, although the parties had agreed that the award of periodic alimony would not be terminated upon the remarriage of the recipient spouse, a court may not abdicate its statutory authority to modify, or refuse to modify, periodic alimony when directed to do so by a statute. Id. at 94.
Henderson and Mogren have not attempted to, nor has this court endorsed, the defeat of any statutory requirements because § 30-2-55 pertains to awards of periodic alimony; therefore, we do not perceive a conflict between our decision in this case and the decisions in Oliver and Ex parte Murphy. Fur *636 thermore, both Oliver and Ex parte Murphy involved provisions specifically labeled as periodic alimony. The provision at issue in this case was not so labeled. In the case of an integrated bargain, the award may not be modified without the consent of both parties because
"[t]he parties have agreed that the support payments and the provisions relating to the division of property are reciprocal consideration. To modify the alimony provision might drastically alter the entire character of the property settlement agreement to the detriment of one of the parties. Hence, the trial court may not modify the alimony provision of the 'integrated bargain’ without the consent of both parties. See Plumer v. Plumer, 48 Cal.2d 820, 313 P.2d 549 (1957); Fox v. Fox, 42 Cal.2d 49, 265 P.2d 881 (1954); Movius v. Movius, 163 Mont. 463, 517 P.2d 884(1974).”
Little v. Little, 349 So.2d 48, 51 (Ala.Civ.App. 1977) (Holmes, J., concurring specially).

. Because we have concluded that the alimony award was part of the parties’ integrated bargain, we decline to further address Henderson's assertions that the alimony award was an award of periodic alimony. We further decline to address Henderson’s argument that the alimony award was an award of rehabilitative alimony, based upon the fact that the award was part of an integrated bargain and the fact that Henderson failed to raise the argument below. Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala. 1992) ("This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”).

. The circuit court did not indicate whether it found Henderson in civil or criminal contempt, and the punishment for Henderson’s contempt is not revealed by the record or by the parties in their briefs.