MOORE, Judge,
concurring in part, concurring in the result in part, and dissenting in part.
As to Part I. of the main opinion, I concur in part and dissent in part. I agree that the Montgomery Circuit Court (“the trial court”) erred in determining that James Michael Henderson (“the former husband”) had incurred an obligation to pay Julie Jones Mogren (“the former wife”) alimony in gross. Among other things, to be characterized as alimony in gross, an award must be payable out of the present estate of the paying spouse as it exists at the time the obligation arises. Ex parte Hager, 293 Ala. 47, 55, 299 So.2d 743, 750 (1974). The undisputed facts show that, at the time of the parties’ divorce, the former husband had no present estate from which to pay the former wife the amount of alimony to which he agreed. Later, when the parties modified their agreement in 2010, the former husband had just come out of bankruptcy and, again, did not have a sufficient estate to fund the alimony award to which he had agreed. Thus, the alimony obligation could not be considered alimony in gross.
The undisputed evidence shows that, when negotiating both the original settlement agreement and the modification agreement, the parties contemplated that the former husband would pay the former wife a monthly sum, not from his present estate, but from his current and future earnings, a hallmark of periodic alimony. See TenEyck v. TenEyck, 885 So.2d 146, 151-52 (Ala.Civ.App.2003). In both agreements, the parties set out that the monthly payments would be “in satisfaction of [the former husband’s] obligations of support and maintenance,” which is the purpose of *641 periodic alimony. See id. Notwithstanding any language to. the contrary in a postdivorce agreement between the parties, an obligation to pay periodic alimony, when voluntarily incorporated into a judgment, is modifiable upon a showing that the recipient spouse has remarried. Ex parte Murphy, 886 So.2d 90, 94-95 (Ala. 2008). In this case, the parties expressly agreed in their original settlement agreement that, “if a petition for divorce is filed by either party, the provisions [of their settlement agreement] may be incorporated into a final decree of divorce rendered.” When they modified their agreement in 2010, they expressly carried that provision forward, and, as a result, the modification agreement was incorporated into a judgment of the trial court. Hence, under Ex parte Murphy, the former husband’s obligation to pay periodic alimony should have been terminated upon proof that the former wife had remarried.
The main opinion concludes otherwise by determining that the alimony obligation is neither one for periodic alimony nor one for alimony in gross, but, rather, a non-modifiable integrated bargain. Although the parties stated that they had entered into an integrated bargain, the facts bear out that they did not make such an agreement. See Kenchel v. Kenchel, 440 So.2d 567, 569 (AIa.Civ.App.1983) (holding that substance of award takes precedence" over the form or label used).
“In the ‘integrated bargain’ category of agreement, the amount of alimony to be paid for support and maintenance has been established by the parties by taking into account the property settlement features of the agreement. In other words, ‘ “integrated bargain” agreements [provide] for both support and division of property, but with the entire provision for one spouse being in consideration for the entire provision for the other, so that the support and property terms are inseparable.’ 61 A.L.R.3d 520, 529.”
DuValle v. DuValle, 348 So.2d 1067, 1069 (Ala.Civ.App.1977). The undisputed evidence indicates that the parties had practically no property of any value when they agreed to the amount of periodic alimony the former husband was to pay to the former wife, with the former wife having already received over $100,000 in equity from the sale of the marital home; the largest asset of the parties, and the parties basically evenly dividing the few remaining marital assets. Thus, this is not a case in which the former wife relinquished a claim to marital property in order to obtain a greater amount of periodic alimony. The parties did not even consider the relatively inconsequential value of the remaining marital-property settlement when negotiating the amount and duration of the periodic alimony.
When parties, through bargaining, have established the amount of periodic alimony to be paid by taking into consideration their property settlement, the courts do not modify the periodic-alimony aspect of the agreement because “[t]o modify the alimony provision might drastically alter the entire character of the property settlement agreement to the detriment of one of the parties.” DuValle, 348 So.2d at 1069. In this case, the modification of the former husband’s periodic-alimony obligation would not in any way disrupt the character of the property division so as to render it inequitably favorable to the former husband. Accordingly, the agreements incorporated into the divorce judgment did not constitute an integrated bargain and the award of periodic alimony remained subject to modification. The trial court should have terminated the former husband’s periodic-alimony obligation upon the undisputed proof that the former wife *642 had remarried. See Ala.Code 1975, § 30-2-55.
• As to Part II.A. of the main opinion, I concur that the judgment finding the former husband in contempt for failing to pay periodic alimony to the former wife should be reversed. Upon filing his modification petition, the former husband paid the $900 in monthly periodic alimony into his attorney’s trust account. The former wife later moved the trial court to release those funds to her, but the trial court denied her motion, thus implicitly authorizing the former husband’s actions. The former husband apparently relied on this court’s statements in Sanders v. Burgard, 715 So.2d 808, 811 (Ala.Civ.App.1998), in which we implied that a payor spouse could avoid contempt by paying periodic alimony into an escrow account while a modification petition was pending. This court intended to overrule that'part of Sanders in Scott v. Scott, 38 So.3d 79, 88 (Ala.Civ.App.2009), but it did not use clear and effective language. Hence, the former husband reasonably could have relied on Sanders in making his initial decision to pay the periodic alimony into his attorney’s' trust account. Coupled with the later ruling by the trial court refusing to release those funds, the former husband certainly held a good-faith belief that he was not acting in willful violation of the trial court’s orders and that he could not be held in contempt.
I also concur that Sanders and Scott should be overruled to the extent that those opinions authorize payment of periodic alimony into an escrow account or a third-party account as a means of avoiding a finding of contempt. This court had no authority to create any mechanism by which a payor spouse could be relieved of his or her duty to comply with an existing and valid court order requiring direct payments of periodic alimony to a recipient spouse. Until the issue is squarely before us, I express no opinion as to the, power of a trial court to enter any pen-dente lite orders suspending the payment of periodic alimony while considering a petition seeking to modify or terminate a periodic-alimony obligation. I still maintain that a payor spouse should be able to obtain reimbursement of any periodic-alimony payments made after the recipient spouse remarries or begins cohabiting with a member of the opposite sex and that § 30-2-55 has been misconstrued as providing otherwise. See Scott, 38 So.3d at 88-91 (Moore, J., concurring in part and dissenting in part as to the rationale and concurring in the result).
I concur in the result in part and dissent in part as to Part II.B. of the main opinion. The record shows that the former husband presented undisputed evidence indicating that he was unable to comply with almost all the provisions of the judgments pertaining to the term life-insurance policy, and the inability to comply is a complete defense to a contempt claim. Carr v. Broyles, 652 So.2d 299, 302-03 (Ala.Civ. App.1994). The former husband did, however, fail to prove an inability to name the parties’ children as successor beneficiaries. The trial court could have disbelieved his testimony that he did riot know he was supposed to name them, see Pierce v. Helka, 634 So.2d 1031, 1032 (Ala.Civ.App.1994), so I agree that the judgment of contempt should be affirmed in that regard.
Finally, I dissent as to Part III. of the main opinion. Because. I believe the trial court erred in failing to terminate the former husband’s periodic-alimony obligation and largely erred in finding the former husband in contempt, I believe this court should remand the case for reconsideration of the attorney-fee award.